*Litchfield,*
June, 1838.    CRANE and others *against* CAMP and others.

Crane
*v.*
Camp.

The appointment of freeholders, by a justice of the peace, to assess the dam-
ages sustained by the owner of land through which a highway is laid out,
by the select-men, is a ministerial act, which may be performed by a jus-
tice, who is interested as an inhabitant of the town liable to pay such dam-
ages.

Where the select-men gave notice, by mail, to the owner of land through
which they were about to lay out a highway, who resided in the state of
*New-York*, to be present at the laying-out of such highway; it was held,
that this was reasonable notice; and that personal notice, in such case,
was not necessary.

The statute provision regarding notice of the laying-out of a highway, by the
select-men, is confined to owners *within this state.*

No previous notice to land-owners of the appointment of freeholders to assess
the damages, is necessary.

THIS was an action of trespass *quare clausum fregit;* tried,
on the general issue with notice, at *Litchfield, February*
term, 1838, before *Church,* J.

It was admitted that the plaintiffs were owners of the land
described in the declaration, deriving their title from *Hiram
Bennett,* by deed dated *April* 6th, 1835; and that the acts
which they complained of, were committed by the defendants.
The defence was founded on certain records and proceedings
of the town of *Sharon,* and of the county court for *Litch-
field* county; which they offered in evidence. They were as
follows:

1. "At a town meeting holden *April* 7th, 1834, *Voted,* that
the select-men be directed to lay out a public highway, between
*Z. Bostwick's* and the old Chimney-place."

2. "Town meeting, *April* 28th, 1834. *Voted,* that the
report of the select-men on the road, &c. [describing the high-
way above mentioned] be accepted."

3. "Be it remembered, that on the 17th day of *April,* 1834,
the subscribers, select-men of the town of *Sharon,* having
given notice in writing, by mail, to *Hiram Bennett,* of *Mon-
ticello,* in the state of *New-York,* owner of the said land, &c.
[describing the land mentioned in the declaration] to be present
at the laying-out of the same, and show reason against it,
and having fully heard the parties, we have laid out and es-
tablished a public highway, &c. [describing it.] And the said
*Bennett* and the subscribers, not being able to agree on the

*Litchfield,*
June, 1838.

Crane
*v.*
Camp.

damages, the subscribers applied to *Israel Camp*, Esq. a justice of the peace, and qualified to act in said matter, who thereupon appointed *Martin Strong*, Esq. &c., disinterested freeholders of the town of *Salisbury*, to estimate damages; and said freeholders, being duly sworn, by said justice *Camp*, and having notified said *Bennett* to be present, did assess the damages at 45 dollars."

4. The proceedings of the county court, offered by the defendants, showed an application for a jury to re-assess damages for said *Bennett ;* which application was granted, and a jury were empannelled, who assessed the damages at 213 dollars, 67 cents. The report of the jury was accepted, by the court; and the usual order issued in the premises.

The plaintiffs objected to the admission of these records, and accompanied their objection with an offer of testimony to prove, that said *Israel Camp* was an inhabitant of the town of *Sharon*, and the owner of real and personal estate in that town, for which he was liable to be, and was in fact, assessed and taxed; and that he was, therefore, disqualified to act in the premises : also, that neither said *Bennett*, nor any other person for him, was notified to appear before justice *Camp*, to be heard relative to the appointment of freeholders to appraise the damages done to his land, by the laying-out of the highway ; and that neither he, nor any other person for him, was notified to appear before the appraisers at the assessment of damages, or was present, on either of these occasions.

The court admitted the evidence offered by the defendants, and rejected that offered by the plaintiffs.

The jury returned a verdict for the defendants; and the plaintiffs moved for a new trial.

*Church*, in support of the motion, contended, 1. That the proceedings were void, because the appraisers were appointed by one of the parties in interest. That the interest of justice *Camp* would disqualify him to act *judicially*, is unquestionable. *Stat.* 148. *tit.* 21. *s.* 38. Now, the truth is, that this proceeding partakes both of a judicial and ministerial character. He makes enquiry and investigates the fitness of the appraisers ; and thus far, he acts judicially. It is like the act of a judge of probate in appointing commissioners on an insolvent estate. But would such an appointment be valid, if the judge

who made it, was interested in the estate? Can a sheriff, who is a party in interest, serve the *venire*, where he has the power of selecting the jury? Would not the array of a jury, selected by a clerk thus situated, be quashed? 2 *Burn's Just.* 497. 3 *Bla. Com.* 354. *Woods* v. *Rowan* & al. 5 *Johns. Rep.* 133. *Gardner* v. *Turner*, 9 *Johns. Rep.* 260.

2. That the select-men did not, (as they should have done) give reasonable notice of their proceeding to lay out the highway, to *Bennett*, over whose land it was to be laid. In such case, "reasonable notice" is required. *Stat.* 268. *tit.* 48. *s.* 11. But here, such notice is not found, in terms; nor are any facts found, from which it can be inferred. Consistently with the finding, the notice may have been given on the very day the road was laid out. Nor does it appear that *Bennett* was present. Where the kind or mode of notice is prescribed by statute, it must appear that such notice was given; and in all other cases, *personal* notice must be given. Here was neither statute notice, nor personal notice. The proceedings of the select-men, therefore, constitute no defence to the action.

3. That no notice was given of the time and place of appointing appraisers; and so the plaintiffs had no opportunity of stating objections. On general principles, property cannot be taken or assessments made, that shall bind the owner, without notice to him. *The Mayor*, &c. *of New-York* v. *The Manhattan Company*, 1 *Caines*, 507. *Owners of grounds*, &c. v. *Mayor*, &c. *of Albany*, 15 *Wend.* 375. *Commissioners of Highways of Kinderhook* v. *Claw* & al. 15 *Johns. Rep.* 537. 2 *Dal.* 314, 5.

*Sterling*, contra, contended, 1. That the power of appointing appraisers being given to *any* justice of the peace, and the act of appointing being a *ministerial* act, if the persons appointed have the requisite qualifications, the appointment is valid. *Stat.* 268. *tit.* 48. *s.* 11. *Tweedy* v. *Picket*, 1 *Day*, 109. *Fox* v. *Hills*, 1 *Conn. Rep.* 295. *Betts* v. *Dimon*, 3 *Conn. Rep.* 107. That the appraisers in this case had the requisite qualifications, is not disputed.

2. That the notice given by the select-men to *Bennett*, who resided out of the state, was sufficient. In the first place, it is not certain, that any notice to an inhabitant of another state, is necessary. But secondly, if necessary, the notice

given, which was by mail, was sufficient. Thirdly, as the record shews, that notice was given, this will be deemed reasonable notice, at least until the contrary is shewn. Fourthly, it appears from the report of the select-men, that *Bennett* was *present;* and if so, the want of notice was thereby waived. They say, that they and *Bennett* were *unable to agree* on the damages. Fifthly, notice was waived, by the review, which went on the ground that the previous proceedings were regular.

3. That the laying-out of the highway is not made void for want of notice of the time and place of appointing the appraisers. In the first place, no statute or rule of law requires such notice. Secondly, if such notice was proper, it was included in the notice of laying-out. This necessarily included notice of all the regular steps in the proceeding.

HUNTINGTON, J. The plaintiffs except to the ruling of the judge at the circuit, on several points, which appear on the motion.

1. That the justice (*Camp*) had power to appoint the appraisers, notwithstanding he was an inhabitant and resident of the town of *Sharon*, and owned property which was legally taxable, and actually taxed there. It was urged, that as the town was liable to pay the damages assessed by the appraisers, (*Stat. tit.* 48. *s.* 11. *p.* 268.) he was disqualified by the statute (*tit.* 21. *s.* 38. *p.* 148.) which enacts, that "whenever there shall be so near a relationship between any judge or justice of the peace, and any party in a civil action, as between father and son, by nature or marriage, brother and brother in like manner, uncle and nephew in like manner, landlord and tenant ; or whenever any judge or justice may be liable, in any manner, to contribute, out of his estate, to the damages, cost or expenses of any action ; or whenever he may receive a direct pecuniary benefit, by the determination thereof; in all such actions, the said judge or justice shall be disqualified to act as judge or render judgment." Independent of the practice, which we believe to have been general in this state, sanctioning the act of the justice in this case, and without relying on the words of the former statute, which authorizes the appointment by "a justice of the peace," it is a sufficient answer to this exception, that this court have repeatedly held,

*Litchfield*, June, 1838.

Crane
*v.*
Camp.

that the justice, in proceedings of this nature, acts *ministerially*, not *judicially*. This point is not now open to discussion, at least under the peculiar circumstances of this case. *Tweedy* v. *Pickett*, 1 *Day* 109. *Fox* v. *Hills*, 1 *Conn. Rep.* 295. *Betts* v. *Dimon*, 3 *Conn. Rep.* 107. If such be the character of the act, it is obvious the justice was not disqualified, by the statute, to appoint the appraisers. *They* were inhabitants of an adjoining town, were freeholders, and indifferent between the parties. The record shows them to be such; and if the fact were otherwise, the plaintiffs would have been permitted to show it. The cases cited, by the plaintiffs' counsel, reported in 5 *Johns. Rep.* 133. 9 *Id.* 260., and the authority of *Burn's Justice*, are not analogous to the present case; and if they were, cannot controul the decisions of this court, in the cases to which we have referred.

2. That reasonable notice, (if *any* notice was necessary) was given to *Bennett*, residing in the state of *New-York*, over whose land the highway was laid, that the select-men would proceed to examine, and if needful, lay-out the same. The exception taken to this opinion of the judge, admits of distinct answers. The statute, (*tit.* 48. *s.* 11. *p.* 268.) enacts, that "the select-men of the respective towns, or the major part of them, may lay out such public highways or private ways, as they shall judge needful, within their respective towns; first giving rsasonable notice to the owners of the land through which the same are to be laid out, or leaving such notice at their place of abode, if within this state, to be present, if they see cause, at the laying-out of such ways." The select-men, in their report, state, that they "gave notice, in writing, by mail, to *Hiram Bennett*, of *Monticello*, in the state of *New-York*, to be present at the laying-out of said way, and show reasons, if any, against the laying-out of said highway," &c. It sufficiently appears, that reasonable notice was given to *Bennett*. It was sent by post; and the statute preseribes no form of notice to inhabitants of other states; nor does it authorize any court or judge to issue an order of notice. The select-men alone can give the notice, (if any is required,) and if it cannot be given in this mode, there must be actual notice given. Indeed, such is the claim now made by the plaintiffs. If it can be sustained, it is very apparent, that serious impediments may exist to the laying-out of highways by the select-men, and much unneces-

*Litchfield*, June, 1838.

Crane
*v.*
Camp.

sary trouble and expense be incurred. The owner may reside at a great distance, or in a foreign country, or his place of residence may be unknown. In all such cases, the proceedings must be suspended, until he has actual notice that they are pending, if the argument urged at the bar is to prevail. It would certainly require high authority to induce us to yield our assent to it. And there is no necessity for requiring personal notice in cases of this kind. The laying-out of highways is matter of notoriety. Every non-resident owner of land, it may be presumed, has employed some person to take the oversight of it, through whom notice in fact may be given. And if the owner shall declare himself aggrieved, by the laying-out of the highway, the statute provides, that it shall not be laid open or occupied until the expiration of twelve months after it is laid out, that he may apply for relief, in the manner specified, and also have time to fence and secure his inclosure. The statute also enacts, that within eight months after the highway is laid out, such aggrieved person may apply to the county court, and such proceedings may be had, as will afford him an opportunity to show that the way is not of common convenience and necessity, or that the damages assessed to him, ought to be increased ; and adequate relief may thus be given, if he is entitled to it. It seems to us, therefore, that no principle of justice demands of us to adopt a rule requiring actual notice, where the statute has not prescribed it, where the inconveniences resulting from it, would be so numerous, and where such ample provisions are made to remedy any injustice which might arise from the want of actual notice. Besides, such a rule would give to non-residents notice much more perfect and complete than that which is required by the statute, to be given to residents. The latter must be satisfied with notice in fact, or leaving it in writing at their usual place of abode, while the former, by judicial legislation, would be entitled to personal notice. We cannot suppose the legislature intended to confer such a privilege upon non-resident owners ; nor has any statute given it. If they are to be notified, all which can be demanded, is, that the notice should be given in a reasonable manner, and in a reasonable time. *The King* v. *The Justices of Worcestershire, 2 B. & A.* 228. We think this was done in the present case. The notice was sent by post, a mode both usual and safe, and well adapted to convey the

*Litchfield,*
June, 1838.

Crane
*v.*
Camp.

necessary information, with reasonable speed and certainty of being received. It is, in most cases, the legal mode of transmitting notices of the dishonour of bills and notes; and is frequently adopted, by the judges of this court, in the orders of notice, which the law authorizes them to give. In the absence of all proof to the contrary, we are bound to presume the notice was sent, so as to give the non-resident owner reasonable opportunity, either in person or by his agent, to be present at the laying-out of the highway.

But the statute makes no provision for *any* notice to non-resident owners, in a case like the present. The notice of which it speaks, is confined, in terms, to owners "within this state." And we can easily perceive why it was so limited. It was foreseen, that insuperable difficulties might arise from requiring notice to be given to all the owners. Their residence might be unknown; or they might reside where it would be impossible to give them notice, within any suitable time; and thus it might become impracticable to have a road laid out, however necessary and convenient it might be for the public. It was also well known, that in most, if not all cases, the non-resident owner would employ an agent to take care of his lands, to whom notice might be given; and that the owner of the land would not be divested of the fee, by the laying-out of the highway, an easement only being created in it. These were, probably, some of the reasons which induced the legislature to confine the notice to owners within this state; but whatever the reasons may have been, it is obvious they have so limited it; and as neither the legislature have required notice to be given to non-resident owners, nor any practice with which we are acquainted, sanctioned it, we do not feel any disposition, had we the power, now for the first time, to require it.

3. That it was unnecessary to give notice of the time and place when and where the appraisers would be appointed, and when they would meet to discharge the duties imposed on them. The opinion of the judge on this point, was correct. Such notice is not demanded, by any law or practice known to us; and we perceive no good reason why it should be required.

We have been referred to the cases of *The Corporation of New-York*, v. *Manhattan Company*, 1 *Caines' Rep.* 507. and *Owners of grounds*, &c. v. *Mayor*, &c. *of Albany*, 15

*Wend.* 375., as supporting the second and third exceptions taken in this case. Upon examination, we find they have no bearing upon the case before us. It is presumed the laws of *New-York* require notice to be given of the application named in the first case cited, although no particular form is specified, and the point decided was, that the notice which was in fact given, was not sufficiently definite as to time and place, and was, therefore, "irregular." The case of *The Commissioners of Highways of the Town of Kinderhook* v. *Claw* & al. 15 *Johns. Rep.* 537., was also cited in support of the exceptions taken by the plaintiffs. In that case, it appeared, that an appeal from the decision of the commissioners of highways, had been made to three judges of the court of *Common Pleas,* pursuant to the statute, who proceeded to hear the appeal, and reversed the decision of the commissioners, without any notice to them. The statute did not, in terms, direct notice to be given. The supreme court held, that notice was necessary, because the duty imposed upon the judges, was strictly *judicial ;* and where it is judicial, the general principle is well settled, that both parties are entitled to be heard, and notice to both is indispensably requisite. *Painter* v. *Oil Gas Light Co.* 3 *Adol. & Ell.* 433. It is difficult to perceive any analogy between the judicial act of a court, and the act of a justice appointing appraisers, and their act of appraisal. The case cited much more resembles the proceedings under our statute, by the county court, which are in the nature of appeals from the doings of the select-men in relation to highways ; (*Stat. tit.* 48. *s.* 13. *p.* 271.) and where notice is required to be given to the select-men, and which would be necessary, on general principles, without the aid of a statute provision. The peculiar propriety in requiring notice to be given in appeals to the judges of the court of *Common Pleas,* from the commissioners, under the highway act of the state of *New-York,* exists in reference to petitions for a review of the proceedings of select-men brought to the county court, under the highway act of this state, and is well expressed, by the court, in the case cited. They (the commissioners or select-men) act in the discharge of a public trust ; and it is to be presumed, in strict conformity to all the requirements of the statute. An appeal to three judges, opens the whole matter ; and if the proceedings of the commissioners are liable to be reversed without notice, upon the

*Litchfield,*
June, 1838.

Crane
*v.*
Camp.

mere *ex parte* allegations and proofs of the plaintiff, the probability is, that their determinations would be overturned in every instance.

We have not thought it necessary to refer to the facts appearing on the motion, that the select-men and *Bennett* were unable to agree upon the amount of damages sustained by him, in consequence of the location of the highway over his lands, and that he availed himself of the statute provision to obtain a re-assessment of the damages, awarded by the freeholders appointed for that purpose, by the justice, and which were considerably increased.    The opinions expressed by the judge who tried the cause, do not require the aid of these facts to sustain them.    They have not, however, been overlooked by us ; and in a doubtful case, might be important to show, that some of the exceptions which were overruled, have no foundation in fact.    It might be reasonably inferred, that *Bennett* was present, in person or by agent, at the laying-out of the highway, from the statement made by the select-men, that they and *Bennett* were unable to agree upon the amount of damages sustained by him.    And his petition, with the proceedings of the county court thereon, show, that he obtained a larger sum as damages, than the amount originally awarded to him.    We feel no disposition to aid him in any speculation under the colour of legal proceedings.    It is probable this controversy would never have arisen, had the re-assessment of damages been satisfactory to him.    Having availed himself of the remedy secured to him by law, he ought to be contented with it, and not be indulged in treating it as nugatory, or binding, as his interest or pleasure may prompt.    This would be, in effect, to enable him to make use of the law securing him in his just rights ; and, after a fair and just determination of them, to allow him to yield obedience or not, as his own judgment might dictate.

We do not, however, wish to be understood as deciding this case upon these grounds.    We consider it embraced by broader and more general principles, to which we have referred, in the opinion which has been expressed.

There is no ground on which this motion for a new trial can be sustained ; and it is, therefore, denied.

In this opinion the other Judges concurred.

New trial not to be granted.