GILMAN B. INGRAHAM, and others, in equity,

*vs.*

CAMDEN AND ROCKLAND WATER COMPANY.

82 335
92 377

Knox. Opinion February 11, 1890.

*Eminent domain. Water. Legal taking. Remedy. Private Laws,* 1880, *c.* 212; 1885, *c.* 522. *Public laws,* 1889, *c.* 284.

The complainants recovered judgment against the defendants as trespassers in preventing the natural waters of a brook flowing through their lands, for a period before the defendants had proceeded to take the waters, under the authority given to them by the legislature. That did not prevent the defendants acting under their charter afterwards, thus remitting the complainants to the statutory remedy provided for their future damages instead of the former remedy at common law.

The defendants' charter authorizes them to "take, detain and use the water of Oyster River Pond, and, all streams tributary thereto in the town of Camden." This gives them the authority to detain the water in the pond, thus flowing the lands of proprietors on the pond and streams above, and lessening the natural flow below; all proprietors both above and below, having a statutory remedy specially provided for the damages sustained by them.

A taking by the defendants of so much water from Oyster River Pond as may be required by them, "not exceeding 750,000 gallons every 24 hours, and no more" is a sufficiently definite taking, and damages to proprietors below the pond are allowable upon the presumption that the defendants will consume that amount. This is what they are entitled to take.

ON REPORT.

This was a bill for an injunction to restrain the defendants from maintaining a dam at the outlet of Oyster River Pond, in Camden, and diverting the water of the pond from a brook below. The case was submitted to the law court upon the bill, answer and proofs.

The facts are stated in the opinion.

*Montgomery and Montgomery,* for plaintiffs.

Special laws of 1885 do not give the corporation a right to build a dam, or divert the natural flow of the water. The act gives it only the right of an individual over the surplus water

of the pond. The grant is to be taken most strongly against the grantee. *Water Co.* v. *Water Co.*, 80 Maine, 544, 563; *R. R. Co.* v. *R. R. Co.*, 118 Mass. 392. The charter does not say a dam may be built or a reservoir made of the pond. It does not mention the brook, property in which cannot be taken from plaintiffs except by specific grant. *Lee* v. *Pembroke Iron Co.*, 57 Maine, 488. A lawful dam will not be allowed to produce any unnatural condition of the pond. *Cowdrey* v. *Woburn*, 136 Mass. 413. No defense that dam is built on defendant's own land. Wash. Easements, 280, 281; High Injunc. § 794; *Barrett* v. *Parsons*, 10 Cush. 367.

Certificate shows a taking of somewhere between one and 750,000 gallons per day. Not a legal taking of surplus which would naturally flow to the pond. *R. R. Co.* v. *R. R. Co.*, *supra.* If defendant answers, to a claim for damages, that plaintiffs have not sustained substantial injury, we should be obliged to resort to the uncertainty of conflicting testimony to prove the invasion of our water rights and its extent. There must be written evidence of amount taken. *Hamor* v. *Bar Harbor Water Co.*, 78 Maine, 127; *Warren* v. *Spenser Water Co.*, 143 Mass. 9. The right to interfere with the natural flow from the pond to the brook should be stated with certainty in the certificate.

*C. E. Littlefield,* for defendant.

Certificate of taking, filed in registry of deeds and with county commissioners, sufficient; but made valid by act of 1889, c. 284. Act applies to this case. *Read* v. *Frankfort Bank*, 23 Maine, 322; *Coffin* v. *Rich*, 45 Id. 514; *Miller* v. *Graham*, 17 Ohio, 1; *Collins* v. *Spicer*, 99 N. Y. 225. No injunction should issue. Act in force at the time of hearing on the bill. Injunctions should conform to facts existing at time of hearing, (*Trulock* v. *Merte*, 72 Iowa, 510), and vacated when reasons for granting have ceased to exist. *Welmore* v. *Low*, 34 Barb. 515. High Injunc. § 1577; Pom. Eq. § 1337. New vote and new filing June 29, 1889, brings the case within *Woodbury* v. *Marblehead Co.*, 145 Mass. 509. When injunctions will not issue: *Haskell* v. *Thurston*, 80 Maine, 132; *Morse* v. *Machias Water Power Co.*, 42 Id. 127; Story Eq. § 956 a. b. and n. 1; *Swift* v. *Jenks*, 19 Fed. Rep. 641.

Conditional injunctions:    High Injunc. § 830; Story Eq. (11th Ed.), § 727 n. 2; *McLeary* v. *Kansas City*, 21 Fed. Rep. 257; *Field* v. *Caernarvon Ry. Co.*, L. R. 5 Eq. 190.

A city and two towns dependent on defendants for their supply of water for domestic, fire and other purposes.

PETERS, C. J.    The complainants allege that they have parcels of land through which the waters of Oyster River Pond brook, running from Oyster River Pond, were accustomed naturally to flow, and that they have enjoyed a beneficial use of the waters of the brook until lately deprived of such use by the acts of the defendants; that the defendants have erected a dam at the outlet of the pond which supplies the brook, thereby lessening the natural flow in the brook and diverting it into other channels, to the complainants' injury.    They further allege that they have already established, by legal judgments in their favor, that the erections at the outlet of the pond are a nuisance as against the right of the complainants; and they pray for the mandate of this court to effect a removal of the alleged nuisance.

The defendants justify their acts as done by legislative authority, which allows them to appropriate the waters of Oyster River Pond and its tributaries, for the purpose of creating a water-supply for the use of the inhabitants of Camden, Rockland, Thomaston, and other places; and the defendants allege that, if the complainants have been injured in any way by the institution or operation of their works, a special statutory remedy is provided by which the complainants may obtain their damages therefor. The acts affecting the rights of the parties, are:    Private laws of 1880, c. 212, private laws of 1885, c. 522, and public laws of 1889, c. 284.

The counsel for the defendants discusses several anticipated points on his brief, which are not made against the defendants by complainants' counsel, and we do not imagine it necessary that we should consider them.

The point taken by the complainants that the legal judgments establish conclusively that the dam, which obstructs the water of the brook from flowing in its natural channel, is a nuisance, as

against their present right, is not tenable. In those cases (see *Williams* v. *Cam. & Rock. Water Co.*, 79 Maine, 543), the defendants did not undertake to justify under any legislative authority. They were not in condition to do so. They had not up to that time undertaken to act under any such authority, and were obliged to submit to an assessment of damages in consequence of it. The obstruction was then illegal. But regular proceedings since in taking the land and water necessary for their purposes, and in spreading due notice of their taking upon the public records, have now rendered the obstructions complained of legal. The judgments could not, any more than could the title of the complainants by their deeds, prevent a legal taking by subsequent proceedings, and by such proceedings the statute remedy for the recovery of damages suffered by the complainants has become substituted as an equivalent for the former remedy at common law.

The complainants contend that the legislative authority is not extensive enough to cover all the acts of the defendants that are complained of. Section three in the act of 1885, provides that the defendant corporation, for their purposes, "may take, detain and use the water of Oyster River Pond, and all streams tributory thereto in the town of Camden;" and further provides among other things, that the corporation may erect and maintain dams and reservoirs, and lay down and maintain pipes and aqueducts necessary for the proper accumulating, conducting, discharging, distributing and disposing of water "and forming proper reservoirs thereof," and may take and hold, by purchase, or otherwise, any lands or real estate necessary therefor.

It is contended for the complainants that, inasmuch as the act allows an appropriation of the waters of the pond and its tributaries above the pond, and makes no mention of the brook below the pond, the implication is that the natural flow of the brook is not to be prevented, and that the corporation are to take only such surplus of water as can be diverted without injury to a beneficial use of the flow in the brook as heretofore customarily enjoyed. And it is contended that the intention of the act was, not that the corporation would detain the waters wholly within the limits of the pond, but that they would carry its surplus, in a

state of high water, off into reservoirs to be established in other places. We think it a strained construction of the act to say that the defendants must divert the waters of the pond in such a manner, and to such an extent, and at such times, that there will be no interference with any rights of proprietors on the brook below. The act authorizes the corporation to detain the waters of the pond,—not merely a portion,—but all of them. No words qualify the amount to be taken. The grant is absolute. The complainants have a full remedy and ample protection for all their injury, by the provisions of § 4, of the act of 1885. The act does not prescribe literally where the waters of the pond shall or may be detained, but the meaning is apparent. The company are liable for all damages "occasioned by flowage," and any flowage caused by them must be upon the margin of the pond or on the shores of the tributaries above. Certainly, a detention of water in the pond would be a benefit to proprietors below the outlet of the pond, for it will be inevitable that they will get some use of the water which is not carried away by the pipes of the company.

But, if the legislative acts sufficiently authorize the corporation to take land and water, it is contended by the complainants that there has not been a legal taking.

The taking is in these words:

"Notice is hereby given to all that may be concerned, that the Camden & Rockland Water Company, by virtue of the authority conferred upon it by its charter approved March 4th, 1885, and all amendments thereof, has taken and appropriated so much of the water of Oyster River Pond, and all streams tributary thereto, in the town of Camden, in the county of Knox, as may be necessary and required, for the purpose of conveying to, and continually hereafter supplying the towns of Camden, Thomaston, South Thomaston, and the city of Rockland, in said county of Knox, and the inhabitants thereof with pure water for all purposes authorized by its said charter and any amendments thereof; and the said Camden & Rockland Water Company hereby takes and appropriates, and will take, appropriate, and continually use hereafter from said Oyster River Pond, for the purposes aforesaid, so much of said water as may be necessary and required for the

purposes aforesaid, not exceeding seven hundred and fifty thousand gallons of water, every twenty-four hours and no more. And the said Camden & Rockland Water Company, for the purposes aforesaid, and for the purpose of preserving and holding said water, taken and appropriated, and to be taken, appropriated and used as aforesaid, has erected a dam at the outlet of said pond, and on land owned by said Company, with proper gates and waste ways therein."

The objection relied on by the complainants is that there is indefiniteness in the certificate that the company takes *not exceeding* seven hundred and fifty thousand gallons every twenty-four hours. There is, of course, an uncertainty whether the company will make a daily use of the maximum quantity or measure. In all probability they will not ordinarily use so much. But any loss or inconvenience to be occasioned by this uncertainty is assumed by the company itself. The taking may be an uncertainty to the company, but will be a certainty to all others interested in the question. The company actually takes the maximum measure of water, whether they use it at all times or not. They are liable to land owners below upon the basis of a daily diversion of that amount of water from the pond. The complainants are not in any position to complain against such a kind or extent of appropriation. It will follow, from necessity, that they will be benefitted thereby. They will be paid, if their allegations of injury be true, for more loss of water than they will actually lose. And the company cannot use more than the maximum stated, to the injury of proprietors, without an additional taking.

The complainants call attention to the certificate, that no land other than water is taken by its terms. None need to have been taken, as the company owns what it uses. The cases cited on the brief submitted for the complainants do not apply to the present facts, but relate to the taking of land in contradistinction from water, or to the taking of water without any definiteness of measure. Here the quantity of water to be diverted from its natural stream is fixed with practically a mathematical certainty.

*Bill dismissed with costs.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.