THE NEW HAVEN WATER COMPANY *vs.* CHARLES S.
RUSSELL ET ALS.

Third Judicial District, Bridgeport, October Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

The charter of the plaintiff authorized it to take the waters of any stream
so far as might be "necessary and expedient" to supply certain
communities with water; and provided for the appointment of a
committee to assess damages for the taking, upon application to
the Superior Court or a judge thereof, after "ordinary legal notice"
of such application, "or such notice as any judge of said court
may prescribe," had been given to the adverse parties. *Held* that
service of an application brought under the charter might properly
be made upon the defendants by mail, pursuant to the order of
notice prescribed by the judge; and that a notice of from eight to
ten days was reasonable and adequate.

Subsequent to the grant of the plaintiff's charter, General Statutes,
§ 2600, as amended by chapter 192, § 2, of the Public Acts of 1903,
provided that corporations authorized by law to supply the in-
habitants of municipalities with pure water for public or domestic
use, might take and use such lands, springs, streams and ponds,
as the Superior Court, or any judge thereof in vacation might,
on application, deem "necessary" for the purposes of such supply.
*Held* that if the general law did modify the plaintiff's charter to the
extent of requiring a finding of "necessity" before appointing a
committee to appraise damages, as contended by the defendants, it
did not affect the clause of the charter respecting notice.

The application alleged, and the answer denied, that the taking of the
water was "necessary and expedient," and the case was tried below
upon the theory that a finding of such necessity was a prerequisite
to the appointment of a committee. *Held* that the case would be
treated here in this respect as the parties had treated it in the
court below.

The length of the notice prescribed by statute for serving process in
civil actions generally, is a circumstance to be taken into account
in passing an order of notice resting in the discretion of the court
or judge, but it is not controlling.

A pleading can never be insufficient because it alleges more than it is
necessary for the pleader to prove.

While the amount of water which an applicant seeks to condemn must
be reasonably definite in allegation and proof, such amount may
be measured by all the water of the stream in excess of a specified
minimum.

New Haven Water Co. *v.* Russell.

As tending to prove the general situation and the necessity for the taking, the plaintiff was allowed to show that it had already bought up several water powers and had expended large sums of money in order to connect these streams with one of its storage reservoirs. *Held* that there was no error in this ruling.

The principle that all property is held subject to condemnation for public use necessarily involves the possibility of making just compensation to the property-owner in every instance. Accordingly an offer on his part to prove that his damage from the contemplated taking would be of such a nature that it could not be compensated, and therefore that there could be no condemnation, is properly refused.

A reasonable, not an absolute or indispensable, necessity for the taking, is all that is required.

The reasonableness of the necessity must be ascertained from the facts of each case, and in the determination of this question the exercise of a reasonable discretion will not be interfered with.

A private corporation engaged in furnishing a water-supply to a community, owes it the duty of providing an adequate supply of wholesome water at all times; and in the discharge of this duty it is bound to foresee and provide for an increased use of water in the summer season, for long droughts, the liability of accidents, and for growth in the population and in industrial activity. The supply should be so ample as not only to forestall anxiety lest it fail, but so large that a scarcity cannot reasonably be apprehended.

The facts in the case at bar briefly reviewed, and the finding of the trial judge, of the existence of a present necessity for the taking, upheld.

The defendants insisted that the consumption of water could have been largely decreased and condemnation avoided, had the plaintiff required the use of meters. *Held* that the facts respecting such use were too meagre to warrant this court in holding the conclusion of the trial judge to be erroneous on that ground, even if it could be held that the plaintiff had power to compel the general use of meters.

The defendants also contended that the present water-supply, with adequate storage reservoirs, would meet all reasonable demands. *Held* that the enormous cost of such reservoirs and the slight addition they would make to the supply, as stated in the finding, made them impracticable.

Property taken by condemnation must be restricted to that which will reasonably serve the public use; more than that would be, in effect, a taking for private use, and illegal because an abuse of power.

Argued October 25th—decided December 19th, 1912.

APPLICATION for the appointment of three appraisers

to assess damages to the defendants for taking the waters of Wepawaug River and Race Brook in the town of Orange, brought to and heard by the *Hon. Edwin B. Gager*, a judge of the Superior Court; facts found and judgment rendered appointing appraisers, and appeal by the defendants. *No error.*

*Carl Foster*, for the appellants (defendants).

*George D. Watrous* and *Harrison T. Sheldon*, for the appellee (plaintiff).

WHEELER, J. The respondents plead in abatement because the application was not accompanied by a summons to the parties in interest, and no service was made on the respondents other than by depositing a copy in the post-office, duly addressed, whereas either personal service, or service by copy at their usual places of abode, was required. The applicant demurred to the plea upon the ground that the application was a special proceeding under its charter, which provides for service within the discretion of the judge, whose order was followed, and, further, that the application was not a civil action within the meaning of the statutes relating to service of process.

Section 9 of the charter of the applicant (5 Private Laws, p. 454; 12 Special Laws, p. 18) grants it power to take and use the water of any stream to such extent as may be necessary and expedient in carrying into effect the object of the Act, which was to furnish to certain communities a supply of water; and in § 10 the charter provides a method of assessment of damages, by application to the Superior Court, or a judge thereof, for the appointment of a committee, upon such tribunal "causing ordinary legal notice, or such notice as any judge of said court may prescribe, to be given to the adverse party, of such application."

If this application be held to have been brought under its said charter, as the applicant claims, the service must be held reasonable and adequate, and within the discretion of the judge ordering it, unless a service by mail be held an unreasonable mode of service. The contrary has been held. *Crane* v. *Camp*, 12 Conn. 464, 468; *Ives* v. *East Haven*, 48 Conn. 272, 291.

Section 2600 of the General Statutes, as amended by § 2 of chapter 192 of the Public Acts of 1903, provides: "Any city, town, borough, or corporation authorized by law to supply the inhabitants of any city, town, or borough with pure water for public or domestic use may take and use such lands, springs, streams, or ponds, or such rights or interests therein, as the Superior Court, or any judge thereof in vacation, may, on application, deem necessary for the purposes of such supply. For the purpose of preserving the purity of such water and preventing any contamination thereof, such city, town, borough, or corporation may take such lands or rights as the Superior Court, or any judge thereof in vacation, may, on application, deem necessary therefor."

If it be held that § 2600, as amended, modified the applicant's charter to the extent of requiring a finding of necessity by the Superior Court, or a judge thereof, before appointment of a committee of appraisal, the order of service made is within the charter thus modified, since the notice is discretionary.

The applicant alleged in its application that the taking sought was necessary and expedient. The respondents joined issue on this allegation, and the case has, so far, been tried upon the theory that a finding of such necessity by the judge was a prerequisite to the appointment of the committee. The applicant now claims that no finding of necessity by the judge was

required, since under its charter it was made the judge of the necessity, and empowered to take whatever stream it deemed necessary. We have no occasion to change the character of the case at its present stage from that which the applicant gave to it, by accepting this contention, and shall treat it as the parties have heretofore done.

When the condemnation statute makes no provision for notice, the law will imply the giving of notice, and action under the statute can be had only upon giving reasonable notice. 2 Lewis on Eminent Domain (3d Ed.) § 571; *Baltimore Belt R. Co.* v. *Baltzell*, 75 Md. 94, 23 Atl. 74. The reasonableness of the notice is not governed by the period for service of civil process. A condemnation proceeding is a suit at law; *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 243, 52 Atl. 947, 53 id. 57; *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 37 Atl. 1070; and the respondents urge that the form of summons or notice must have been in accordance with that prescribed for civil actions and civil process generally. But a condemnation proceeding is not a civil action, nor a civil process within the meaning of the statutes relating to civil process. It is a special proceeding to determine in a single action the damages done by the taking. 2 Lewis on Eminent Domain (3d Ed.) p. 930, § 512; *Kennebec Water District* v. *Waterville*, 96 Me. 234, 52 Atl. 774; *Hayford* v. *Bangor*, 103 Me. 434, 69 Atl. 688. The period prescribed by statute for service in civil process was a circumstance, no doubt considered by the judge in determining the notice to be given in this case, but it was not a controlling circumstance. The notice ordered and given was by mail. The return of the officer shows that a copy of the application reached each of the respondents from eight to ten days prior to the date of hearing, when they duly appeared by counsel and

filed the plea in abatement we are considering. To dismiss this application under these circumstances would compel another action, when no claim even is made that the respondents did not have sufficient time in which to prepare their case, and when the method of service ordered has been approved by our law, and the period of notice held more than ample in other special proceedings. *In re Premier Cycle Mfg. Co.*, 70 Conn. 473, 39 Atl. 800. The demurrer to the plea in abatement was properly sustained.

The applicant's charter grants it power to take the water of any stream "to such extent and in such manner as may be necessary and expedient." General Statutes, § 2600, as amended, provides that a corporation such as the applicant may take such rights in any stream as the Superior Court, or a judge thereof, may deem "necessary" for the purposes of a water-supply. The application alleges that it is "necessary and expedient" to take a certain water-supply. The respondents demurred to the application, upon the ground that the charter of the applicant had been repealed so far as it authorized the taking of the water of any stream to such extent and in such manner as might be "expedient"; that is to say, that the charter authorized such taking as might be "necessary and expedient," but General Statutes, § 2600, as amended, had modified this by authorizing such taking as may be "necessary" only. The argument is: under the charter it must appear that the taking was necessary and expedient, while under the charter as modified by this section (§ 2600), it need only appear that it was necessary. The allegation of the application includes not only the allegation of necessity, but also that of expediency. It is in so far broader than the mere allegation of necessity, and hence broader than the applicant claims is required. The sufficiency of an application may be affected by

the omission of a necessary allegation: it cannot be affected by the addition of an unnecessary allegation. The demurrer to the application was properly overruled.

The respondents insist that the amount of water to be taken by the applicant must be reasonably definite in allegation and proof. This we understand to be the law.

The application alleges, and by the judgment the petitioner takes, all the water of the named streams in excess of a certain amount. The amount which can be taken will be measured by the excess above this minimum; it is a variable quantity, but it is never indefinite, since it is all above a certain quantity. *Ingraham* v. *Camden & R. Water Co.*, 82 Me. 335, 340, 19 Atl. 861.

The rulings upon evidence require very brief discussion. The trial court, against the objection of the respondents that the evidence was irrelevant and did not tend to prove the necessity, permitted the applicant to offer evidence that it had, since 1876, been preparing, by plans and purchases, to take the waters of these streams, and had recently constructed a tunnel, having a capacity of thirty million gallons a day, at an expense of over $300,000 for the purpose of diverting the waters of these streams into its system of water-supply.

The evidence was admissible to put the judge in possession of all the facts connected with the proposed water-supply, and to show the good faith of the applicant. It was so held in a similar proceeding. *Olmsted* v. *Morris Aqueduct*, 46 N. J. L. 495, 502. It was also admissible, as claimed, as tending to prove the necessity. No claim was made that the applicant had not expended these funds and made and executed these plans in carrying on its corporate business. That a private corporation has for over thirty years steadily

New Haven Water Co. *v.* Russell.

pursued a definite plan looking to the ultimate acquisition of a source of water-supply, and to that end, through a period of years, has made land and mill-site purchases, and finally built, at great expense, a tunnel with a daily capacity in excess of the present daily consumption of the company, proves its own fixed belief that this source of water-supply is necessary; and we think such a course of conduct is a relevant fact in the proof of the issue of necessity. Individuals and corporations do not ordinarily jeopard a large proportion of their resources upon a plan long matured, unless the end sought is necessary to serve the corporate purposes. *Kountze* v. *Morris Aqueduct*, 58 N. J. L. 303, 308, 34 Atl. 1099.

Another assigned error is the exclusion of the respondents' offer to prove that their damage from the contemplated taking was of such a nature it could not be compensated, and hence that there could be no condemnation.

The ruling was right. All property is held subject to its condemnation for a public use, and the damages awarded will be just compensation as nearly as the nature of the property will admit.

The respondents further insist that the court erred in overruling its claim that "the time within which such reasonably definite amount of water is necessary, must be either present or within a reasonably short time in the future"; and they ask to have the finding corrected in certain particulars upon which the conclusion of necessity rests, and insist that the facts found by the judge do not legally support his conclusion of necessity.

The subjects are related and may be treated together. The necessity for the taking of private property for a public use must be a reasonable one, and the property taken must reasonably serve the purposes of the incorporation.

"Necessary," in legislative Acts according the right of eminent domain, does not mean an absolute or indispensable necessity, but only that the taking provided for is reasonably necessary. *Sayre* v. *Orange,* (N. J.) 67 Atl. 933; *Olmsted* v. *Morris Aqueduct,* 47 N. J. L. 311, 329; *M'Culloch* v. *Maryland,* 4 Wheat. (U. S.) 316, 414. A private corporation engaged in furnishing a water-supply to a community owes it the duty of providing an adequate supply of wholesome water at all times. Experience teaches that consumption increases largely in the summer season, and that changeable seasons, long droughts, and the liability of accidents are contingencies which must be guarded against; a supply adequate for the ordinary season or the present need will not protect against such contingencies. *Olmsted* v. *Morris Aqueduct,* 46 N. J. L. 495, 500. Growth in population and in industrial activity, with consequent increasing use of water, must be anticipated and provided for. *Central Pacific Ry. Co.* v. *Feldman,* 152 Cal. 303, 309, 92 Pac. 849; *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528, 532, 28 Pac. 681; *Rensselaer & S. R. Co.* v. *Davis,* 43 N. Y. 137, 145. Provision for all such likely contingencies must not be scant; it must be ample, so that the health of the people be preserved and their property safeguarded from fire, and all their countless activities—so variously served by an abundant water-supply—be sustained and developed. The supply should be so ample as not only to avoid anxiety lest it fail, but so ample that a scarcity could not be reasonably apprehended. The property taken must be restricted to that which will reasonably serve the public use; more than that would, in effect, be a taking for private use, and illegal because an abuse of power. *Boston & N. Y. Air Line R. Co.* v. *Coffin,* 50 Conn. 150, 155; *Eldridge* v. *Smith,* 34 Vt. 484, 493; Randolph on Eminent Domain, § 185. Nor may pri-

vate property be taken for speculative purposes, or to secure a monopoly, or forestall a rival; *Rensselaer & S. R. Co.* v. *Davis*, 43 N. Y. 137, 146; *Olmsted* v. *Morris Aqueduct*, 46 N. J. L. 495, 502; or in bad faith, or indeed for any other than the corporate purpose. *Smith* v. *Chicago & W. I. R. Co.*, 105 Ill. 511, 519. Purposes such as these are clearly not among those reasonably necessary.

It cannot be foretold when the contingencies of which we have spoken may be expected, nor can the future requirements and prospective needs within a reasonable time be estimated with exactitude; it is necessarily a matter of judgment based upon knowledge of the present and experience of the past. The reasonableness of the necessity must be ascertained from the facts of each case; and a reasonable discretion in reaching this conclusion will not be interfered with. *In Matter of New York C. & H. R. R. Co.*, 77 N. Y. 248; *Bryan* v. *Branford*, 50 Conn. 246; *Anderson* v. *New Canaan*, 66 Conn. 54, 57, 33 Atl. 593. The reasonableness of the necessity will be determined with due regard to the principle that a public or private corporation, charged with the duty of supplying a community with water, fails in its duty if it provides for the present needs and takes no heed of future needs or imminent contingencies. The remedy should precede the untoward happening, and for its accomplishment, prospective needs, within a reasonable time, should be considered. *Kountze* v. *Morris Aqueduct*, 58 N. J. L. 303, 306, 34 Atl. 1099; *In Matter of New York C. & H. R. R. Co.*, 77 N. Y. 248, 266; *Olmsted* v. *Morris Aqueduct*, 46 N. J. L. 495, 500.

The applicant is a private corporation; but on this issue, in reality there are two principal parties in interest, the community and the individual owner. This is an additional reason why we should give a liberal construction to the term "reasonable necessity" when we

determine the extent of land and water rights required for a water-supply, to the end that the public purpose in view may not fail. *Boston & N. Y. Air Line R. Co. v. Coffin*, 50 Conn. 150, 155; *Pittsburgh Junction Co.'s Appeal*, 122 Pa. St. 511, 531, 6 Atl. 564; *Pocantico Water Works Co. v. Bird*, 130 N. Y. 249, 260, 29 N. E. 246.

The finding, in the main, in the parts criticised follows the evidence. From this it appears: The present demand, in the ordinary season, verges too closely upon the supply to afford a reasonable margin of safety. In 1910, at one time, the available water was reduced to a two-weeks supply, although the rainfall of 1910 exceeded the rainfall of 1900 by about one seventh. The probable growth of population in the communities supplied, and their consequent increased demand for water, makes absolutely necessary an immediate increase in the water-supply.

The streams to be taken constitute the only available supply within reach. The flow of these streams, taken in connection with the present and prospective requirements of the communities served and the present available supply, fairly justify the finding that there is a present necessity for their taking.

In its conclusion the trial judge enforced the rule of reasonable necessity as we have interpreted it, and disregarded the respondents' claim that provision for the future should be confined to a reasonably short time in the future. Chiefly in two particulars do the respondents criticise this conclusion, if the facts of the finding stand uncorrected.

First, they insist that the applicant could largely decrease the consumption of water by the use of meters, and, as a consequence, condemnation be avoided. The facts concerning the use of meters, their cost, their effect upon the communities served, and the attitude of such communities toward their use, do not

sufficiently appear to enable us, on this ground, to hold the conclusion of the trial judge erroneous, even though we should hold that the applicant has the power to compel the general use of meters—a proposition whose decision is not, on the face of the contract between the city of New Haven and the applicant, free from difficulty, and one which ought not to be decided in a proceeding to which New Haven is not a party.

Second, the respondents insist that the present supply, with adequate storage reservoirs, would meet all reasonable demands. The finding shows that such storage reservoirs would entail an enormous cost and add little to the supply, and hence are impracticable. The testimony of the engineers fully supports the conclusion of the finding.

There is no error.

In this opinion the other judges concurred.