## BRIDGEPORT HYDRAULIC COMPANY
### vs.
## TOWN OF WESTON, ET ALS.

Superior Court          Fairfield County          File #55293

MEMORANDUM FILED AUGUST 19, 1938.

Marsh, Stoddard & Day, of Bridgeport, for the Plaintiff.

Howard L. Shaff, Pullman & Comley, both of Bridgeport; William H. Cable, Leonard McMahon, both of Danbury; Keogh & Candee, of South Norwalk; John J. Farrell, of Nor-

walk; Dennis P. O'Connor, of Hartford, for the Defendants.

DICKENSON, J. The plaintiff in its complaint sets up that it is authorized by charter to provide a water supply for the City of Bridgeport and certain other towns; that it is engaged in constructing a reservoir known as the Saugatuck Reservoir; that to carry out its purposes it deems it necessary that certain public roads be discontinued; that it gave notice and applied to defendant towns for their discontinuance; that they have declined its petition and more than 30 days have elapsed since such application; and that such discontinuance is a matter of public convenience and necessity.

It prays that this Court discontinue such highways; that it prescribe in its judgment any modifications of such discontinuance prayed for, and any layout of new highways in lieu of those discontinued by such decree or of some or any of them so discontinued as the Court may deem to be required by public convenience and necessity. Further, that the Court appoint a committee under the statute to make a survey and layout in accordance with the judgment of the Court and estimate the damages.

The various defendants, except the State of Connecticut, filed answers admitting notice, denying public convenience and necessity and putting the plaintiff to proof as to its other allegations. The defendant State's answer is similar but sets up a further answer to the effect that the plaintiff's petition is brought under section 1443 of the General Statutes, Revision of 1930, which does not provide for notice to the Highway Commissioner; that one of the roads asked to be discontinued is a trunk line highway over which the Commissioner has exclusive jurisdiction.

To this affirmative defense the plaintiff replies by denying the petition is brought solely under said section 1443; that section 1443 does not provide for such notice and that the road in question is a trunk line highway.

The pleadings have been reviewed in substance because of the questions raised in relation to them in the briefs.

It may be said at the outset that trial was begun within three weeks of the end of the spring session, that counsel in an effort (which was unsuccessful) to conclude the case be-

fore the summer vacation had made concessions both as to pleadings and evidence broad enough to justify the Court now in allowing pleadings necessary to meet the evidence and that the judgment will be reopened during the term, on motion, to allow any such amendments found to be necessary.

As to the plaintiff's claim that having, by right itself determined the necessity of the discontinuance, this cannot be attacked by the defendants for lack of proper pleading, attention is called to the affirmative allegation in its complaint not only that it *deems* discontinuance a necessity but (par. 9) such discontinuance is a matter of public convenience and necessity, an allegation required by section 1443 of the General Statutes, Revision of 1930. *Hatch vs. Merigold,* 119 Conn. 339; *Yanez vs. De Rosa,* 118 id. 471, 472.

While the above authorities cited by the defendants answer the plaintiff's claim somewhat technically, the defendants meet it with substance in their distinction between the taking of private and public rights by proceedings in the nature of eminent domain.

The plaintiff's chief reliance in support of its contention is the authority of *State ex rel. New Haven & Derby R. R. Co. vs. R. R. Commissioners,* 6 Conn. 308, but this decision was based upon an implied intention of the Legislature read into a different statute with a different factual background.

While it is said in that case (p. 314) that "the word 'lands' is comprehensive and may include everything that may be classed as real estate," the Court goes on to state that, "When the statute authorizes the taking of land, *unless there is something indicating a contrary intent,* it authorizes the taking of all the incidents and appurtenances of land", and refers to "other statutes *in pari materia,* [that] expressly and by necessary implication confer [upon railroads] the power to take and use portions of highways for railroad purposes . . . ample provision being made for protecting the rights of the public through the action of the railroad commissioners."

The plaintiff herein claims that right without check, but brings this action directly under a statute that expressly restricts the right.

"The authorities generally declare that where land has once been appropriated for public purposes in the exercise of eminent domain it cannot again be condemned to public use by

city or town for street or other purposes inconsistent there-with without statutory authority for doing so." 4 McQuillin, Municipal Corporations (2nd ed. 1928) §1620. The power of eminent domain extends only to the taking of private prop-erty, and does not authorize the taking of the property of the state, or of subordinate municipalities through whose agency the state government is administered...." McQuillin, supra, §1626.

This Court takes the definite position that as between the two public uses, water for a fraction of the State, and travel for all of it, that section 1443 of the General Statutes, Revision of 1930, requires a finding by the Court not only that the plaintiff deems a discontinuance a matter of public convenience and necessity, but, as it has alleged, it is a matter of public convenience and necessity to abandon the one for the other.

As to the Highway Commissioner's contention that the Norwalk-Newtown Turnpike is a trunk line and that section 1443 does not apply to trunk lines, it is found that the road is a part of the trunk line system as laid out but that section 1443 applies to him as well as the defendant selectmen.

The statute refers to "any public highway or part thereof", and makes no exceptions. Section 1475 of the General Stat-utes, Revision of 1930, provides that the Highway Commis-sioner shall have "the same powers relating to the trunk line and state aid system of highways as are given to the selectmen of towns, etc." So far as the provisions for application and notice in section 1443 are concerned, the Commissioner has waived notice by entering and defending in this action. He has admitted seven of the ten allegations of the complaint, denied one—that relating to public convenience and necessity —and put the plaintiff to its proof on the remaining two. In his "Further Answer" he admits the road in question is under his exclusive jurisdiction and that he has the same jurisdiction relating to it as is given the selectmen. Patently, he has not been aggrieved either by lack of notice or absence of a petition, for he has taken the same stand as the defendant selectman, i.e., that the petition should not be granted. Having taken this position he is estopped from claiming he has had no op-portunity to grant it.

That, as the plaintiff argues, the Court in passing upon pub-lic convenience and necessity is stepping out of its judicial role into a legislative one seems best contradicted by a common

sense interpretation of the statute itself. The plaintiff admits that the towns may agree to an abandonment, but denies that they may disagree or that if they do this Court may dispute the plaintiff's judgment. Such, it seems obvious, could not be the intent of the Legislature, else the direction would have been mandatory upon the selectmen and the remedy left to mandamus. When the statute requires of the Court in order that the discontinuance be granted a "finding the allegations to be true" (§1444), it can hardly mean a finding that application has been made to the selectmen and denied. The final phrase of the sentence containing these words is "as said court may deem to be required by public convenience and necessity."

Nothing contrary to this view can be found in the recent decision of *Bridgeport Hydraulic Company vs. Rempsen,* 124 Conn. 437, 200 Atl. 348 (released June 22, 1938, during trial of this case), reviewing the earlier cases. The defendants there were private owners of land and as to such the Court found that by its charter the plaintiff had the right to take subject to review if the taking was "unreasonable or made in bad faith or in abuse of the power conferred." The Court states: "as we pointed out in the Johnson Case . . . the party to whom is delegated the right to determine whether particular land is necessary for a public use need only allege in his application to the court that he has so determined, leaving the burden of the attack upon the adverse party." The reference is to land not already subject to a public use and the decision fails to support an alternative claim of the plaintiff that this Court is restricted to review of abuse of discretion in any event and may not pass upon the question of public convenience and necessity.

As to the plaintiff's argument that, "The necessity for the construction of the reservoir itself is not in issue," if this is true it has argued itself out of Court on its pleadings, for this is the only reason given therein for the discontinuance of the roads. A reason given for the statement is that such necessity is not referred to in the statute. The statute, section 1443, requires, as has been noted, an allegation in the petition to this Court that the discontinuance is a matter of public convenience and necessity. While it may be that the necessity for a reservoir is not in issue except as put in issue by the parties, the necessity for a reservoir to overflow the roads in question is in issue under the pleadings, statute and evidence.

As the defendants argue in their brief, "The discontinuance of these highways is not a matter of public necessity unless the construction of the reservoir (as laid out) is also", and, "The public conveniences and necessity of this particular taking has not been determined by the legislature", by delegation to the plaintiff.

Before passing to the question of public convenience and necessity, the parties have the right to a definite statement of the Court's position as to the burden of proof. The plaintiff claims that under *Water Commissioners vs. Johnson*, 86 Conn. 151, that this is upon the defendants, the plaintiff having proven it deemed the discontinuance necessary. As has been already indicated, this case and the Rempsen case, in which it is said the plaintiff need not allege public convenience and necessity, have to do with the taking of private lands. In the instant case, contrasting necessities of public uses are involved, the statute requires an allegation of public convenience and necessity, and the plaintiff has made it. It is held the burden is upon it to prove it.

The responsibility which the Court has found devolves upon it is a grave one. Like the plaintiff, it has the apprehension that to halt the project is to chance deprivation of a community in time to come, early or late, of water. Unlike the plaintiff, it has to concern itself with the effect of yielding to a fear that may be unreasonable and thus taking away the rights of others. Neither in reason nor in law may it figure close chances. As was said in *New Haven Water Co. vs. Russell*, 86 Conn. 361, 369: "Experience teaches that consumption increases largely in summer season, and that changeable seasons, long droughts, and the liability of accidents are contingencies which must be guarded against; a supply adequate for the ordinary season or present need will not protect against such contingencies. . . . Growth in population and in industrial activity, with consequent increasing use of water, must be anticipated and provided for. Provision for all such likely contingencies must not be scant; it must be ample, so that the health of the people be preserved and their property safeguarded from fire, and all their countless activities—so variously served by an abundant water supply—be sustained and developed. The supply should be so ample as not only to avoid anxiety lest it fail, but so ample that a scarcity could not be reasonably apprehended. The property taken must be restricted to that which will reasonably serve the public use;

more than that would, in effect, be a taking of private use, and illegal because of an abuse of power."

In considering the case upon the facts it must constantly be borne in mind that the proceeding is under the statute, section 1443 of the General Statutes, Revision of 1930, and the public convenience and necessity referred to therein relates to the discontinuance of roads.

The plaintiff contends from this that the question of the necessity of a reservoir cannot be determined by this Court, this being a matter it itself has the right to determine primarily under the supervision of the Utilities Commission. It has gone into the question on evidence but without prejudice to its claim.

The evidence makes the legal question largely academic, for it is found the plaintiff does or at least will need the proposed reservoir and will require the abandonment of the roads in question to construct it.

The evidence is convincing that the location is the only remaining one that may be utilized feasibly by the plaintiff. In answer to the Court's question, a defendants' expert, whose testimony impressed the Court as outstanding, stated, in effect, that the defendants' plan to increase the capacity of the existing reservoirs was more economical and the plaintiff's proposed new reservoir would yield better water. The statute (§1443) expressly couples the word, "pure" with the word, "ample", in characterizing the water to be provided, and if the term "pure" may be considered a comparative one it would seem important to apply it in its higher degree.

By its charter the plaintiff is required to "supply an abundant supply of pure and wholesome water for any use or service, public, private or domestic."

Again, there is plenty of evidence in the case that interference with established reservoirs by adding to their capacity, would mean their discontinuance for a considerable period of time and create an immediate danger of shortage in view of the present ratio between a safe yield and average consumption.

To objections to this alternative may be added the one that upon the evidence the proposed additions as structurally planned give the impression of being impermanent, not to say unsubstantial, for the water supply of a large and important

community and, being nearer its center of population of being less desirable because of the greater danger of pollution.

As to the need of a new reservoir, while the statistics of the defendants' experts as to lessening increase in population are impressive, there will, on this evidence, be an increase in population, and upon other evidence an increase in use of water *per capita* because of increase in standards of living and new uses of water for domestic comfort.

As to future industrial uses, it is more difficult to determine these than domestic, upon the law of averages. While the general opinion is none too optimistic as to an immediate increase in industry, it may fairly be observed that the present administration with little public criticism has undertaken extensive steps for an increase in armament and from past experience, war, and the preparation for it, greatly increases industrial consumption of water in a community of this character.

Although it does not appear that the plaintiff will need additional water, on its own estimate, for five years at least, and upon the defendants' expert Sanborn's for 15 years, the building of the dam and the seasoning of the water may well take ten years, upon credible testimony.

There is a vast amount of statistics in evidence as to demand and supply of water past, present and future and counsel have analyzed the evidence with infinite pains but with different results. If the situation might be determined by mathematical processes the argument would seem to favor the defendants in their contention that the plaintiff had water enough for the immediate future although their credible expert before referred to estimates a need of more water in 15 years. But as the plaintiff argues, water has to be had where it is found, and it may be added in a sense, when it is found. If the proposed construction may seem somewhat premature its later authorization might be too late and between two mistakes the second would be by far the more serious. As the defendants point out in their reply brief, the plaintiff might have made its application 30 years ago as sections 1443 and 1444 of the General Statutes, Revision of 1930, do not require it to build its reservoir immediately upon a discontinuance. The plaintiff can hardly be criticized for this however, for the public has had that much longer use of the roads. And the argument lends support to the position that further delay

might reasonably affect the practicability of the proposition if it did not endanger the supply for the immediate future.

Upon good and sufficient evidence it should be added it appears that it will be from five to ten years before the proposed reservoir will furnish potable water.

In short, it seems reasonably apparent from the evidence as a whole that within a period that good hydraulic engineering practice requires should be anticipated, the community which the defendant serves will need more water; that the Saugatuck Reservoir will supply that need for many years to come with purer water than may elsewhere be obtained; that it will do so without interruption in the present supply which would be caused by enlarging the existing reservoirs and in the long run at a more economical rate; and finally, that this is the only remaining large source of supply near the Bridgeport area.

It is found that public convenience and necessity required the abandonment of the roads in suit.

As was stated early in this memorandum, counsel in order to expedite a trial agreed on various short cuts. One of these to which the Court was a party was that the provision in section 1444 in relation to substitute roads in case a discontinuance was ordered be deferred to later and supplementary proceedings and the judgment herein is confined to prayer "(a)" of the complaint "that the court grant the discontinuance of said highways herein described." This prayer is granted.

While presumably the case is of such importance that an appeal will be taken which will act as a stay of execution, it does not seem reasonable that the rights of the public in the roads should be abruptly terminated by this judgment and the statute (§1444) provides that the Court may make "any modification of such discontinuance . . . as said court may deem to be required by public convenience and necessity."

It is further found that public convenience and necessity require that said roads be discontinued on and after January 1, 1940, and not before, and it is so adjudged.