TOWN OF GREENWICH *v.* THE GREENWICH WATER COMPANY ET AL.

MIANUS VALLEY TRAILS, INC., ET AL. *v.* THE GREENWICH WATER COMPANY ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued June 5—decided July 30, 1958

*David S. Day* and *Philo C. Calhoun,* with whom, on the brief, was *Benjamin F. Ferris,* town counsel, for the appellant (plaintiff) in the first case.

*John N. Cole,* for the appellants (plaintiffs Mianus Valley Trails, Inc., et al.) in the second case.

*William C. Strong,* with whom was *Frank J. Coyle,* for the appellees (named defendant et al.) in each case.

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (defendant public utilities commission) in each case.

MURPHY, J. The public utilities commission on November 21, 1955, issued a finding and order approving a contract between the Greenwich Water Company and the Port Chester (N.Y.) Water Works, Inc., which had been executed on February 5, 1954, and amended on September 1, 1954. The town of Greenwich appealed to the Superior Court in Fairfield County. In a separate action, Mianus Valley Trails, Inc., of Stamford, and five individual riparian owners of property along the Mianus River in that town also appealed. From the judgments dismissing both appeals the respective plaintiffs, with one exception, have appealed to this court.

The Greenwich Water Company, hereinafter referred to as the defendant, is a specially chartered Connecticut corporation with a franchise to furnish water for public and private use in the town of Greenwich, in a small portion of the town of Stamford adjacent to the Mianus River, in the town of Rye, New York, and its vicinity, and in the county of Westchester whenever that use does not curtail an abundant supply of water for the inhabitants of Connecticut. 8 Spec. Laws 406; 19 id. 848; 20 id. 360; 27 id. 673. Since 1927, the defendant has had the

right to acquire by eminent domain, purchase or otherwise all or any part of the waters of the Mianus River and its tributaries, subject to the right of the New York, New Haven and Hartford Railroad to take water from that river. 20 Spec. Laws 429. The defendant is also empowered to construct such reservoirs as it deems necessary to impound the water and to take by eminent domain, purchase or otherwise such property, rights of flowage and other easements as it may consider necessary for the construction and maintenance of reservoirs, the protection of its watershed or any other corporate purpose. Id., 430. The Port Chester Water Works, Inc., which will hereinafter be referred to as Port Chester, is authorized under its New York charter to furnish water in the town and city of Rye and the village of Port Chester in that state. It has always purchased its water from the defendant, since it owns no supply of its own. Both of these companies are owned and controlled by the same parent organization.

On February 5, 1954, the defendant and Port Chester entered into a contract whereby the defendant agreed to construct a dam on the Mianus River, just north of Farms Road in Stamford, to an elevation of 262 feet above mean sea level. The dam would impound the water in a reservoir 2.6 miles in length extending into, and flooding lands in, Pound Ridge and North Castle in New York state, and also flooding lands owned by the defendant in Connecticut. Port Chester agreed to acquire the eighty acres of land required in New York and also additional land in that state if need developed. The defendant was to erect a filter plant on the Mianus River north of Cos Cob. These facilities were needed to enlarge the storage capacity of the defendant and permit it to supply the increasing demand for water for its

own and Port Chester's customers. The contract provided that it was to be construed according to Connecticut law and to be subject to approval by the authority of the state of New York whose approval is required under the laws of that state for the acquisition and flooding of the lands therein which would be included in the reservoir. That authority is the New York water power and control commission. N. Y. Conserv. Law § 521. The commission approved the contract on July 13, 1954, but conditioned its approval upon approval also by the public service commission of New York, which governs rates; N. Y. Pub. Serv. Law § 89-c; and by the public utilities commission of Connecticut. The public service commission entered its order on November 5, 1954, and the defendant then applied to the public utilities commission for approval. The amendment of September 1, 1954, to the contract is not material to the issues litigated in these actions.

The public utilities commission held twelve hearings from January 3 to June 22, 1955, and recorded over 1500 pages of testimony. It received in evidence numerous documents and maps. It visited and inspected the site of the dam and reservoir. The facts in the record certified by the commission showed that the water requirements of Greenwich and Port Chester are about equal. They had increased from 6.10 million gallons daily in 1940 to 9.39 million gallons daily in 1954. The defendant's three existing reservoirs had a combined total storage capacity of approximately one billion gallons of usable water. The safe yield from them was 4 million gallons per day. To make up the deficiency, the defendant had a contract to purchase raw water from the Stamford Water Company, but not in excess of 6 million gallons a day. This contract was to expire on December

31, 1956. Additional resources have been urgently needed to provide a sufficient supply of water for both the defendant and Port Chester.

The Mianus River originates in New York state. It crosses the state boundary into Connecticut in the northwest section of Stamford and flows southerly through that town until it enters Greenwich above the site of the proposed filter station. The reservoir would flood 216 acres of land, 50 of which are in New York. Most of the water which would be impounded would flow into the reservoir in New York, since 16.2 square miles of the drainage area are in that state and but 1.9 square miles are in Connecticut. The storage capacity of the reservoir would be 2.2 billion gallons, furnishing an estimated safe yield of 16 million gallons daily, which is 12 million gallons greater than present sources. By 1970, the estimated daily need of the defendant and Port Chester will be 13.1 million gallons. The contract is to run for a minimum period of seventy-five years. The defendant agrees to supply Port Chester with the water it requires, but not in excess of 50 per cent of the safe yield from the defendant's existing supply and the Mianus development, and in no event in excess of 8 million gallons daily.

The plaintiffs have made a wholesale attack upon the conclusions of the court and the finding and order of the public utilities commission. The jurisdiction of the commission to approve the contract has been questioned before the commission, in the trial court, and here. Also, it is claimed that the contract, together with its approval by the New York and Connecticut commissions, is an attempt to allocate and divide the waters of an interstate stream and thus is an evasion of §§ 214 and 215 of the General Statutes, the exclusive means of such a division.

There is nothing in § 5401 of the General Statutes, outlining the powers of the public utilities commission, which specifically requires approval by it of any contract entered into by a public service company. If, however, by virtue of a contract entered into by such a company, the services rendered or to be rendered by it are, or are likely to be, inadequate, unsuitable or contrary to the public interest, the commission has the right and the duty to examine into the matter and make such orders as it deems necessary in the public interest to compel the company to fulfil its franchise obligations. Such orders may be enforced by appropriate action of the Superior Court. General Statutes § 5400. By the same token, it was within the authority of the commission to hold hearings on the instant contract to determine whether it was in the public interest for the defendant to enter into it, and to approve it if it was concluded upon the evidence that it would provide a plentiful supply of water for the needs of the Greenwich territory for the reasonably foreseeable future. *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369, 85 A. 636. The commission's finding that the allocation under the contract will be more than sufficient to provide the needs in 1970 meets this test. *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 212, 83 A.2d 177.

General Statutes § 214 authorizes the attorney general, with the approval of the governor, to take such action as is necessary "to protect the state from damage by diversion or other interference with water from streams without the state which enter or are tributary to streams flowing within the state." Section 215 authorizes him to negotiate and contract with out-of-state authorities concerning the use, allocation and diversion of such waters. As there is

nothing in the record to show that such action is necessary at the present time with respect to the waters of the Mianus River, those statutory provisions are not applicable to the situation as it now exists. It is conceivable that in the distant future such action might be desirable if any attempt is made to impede or divert the present flow into the Mianus reservoir.

The Superior Court upon appeal from the public utilities commission does not retry the case but determines from the record certified by the commission whether it has acted illegally or has exceeded or abused its power or acted arbitrarily or without notice and a reasonable opportunity to be heard. General Statutes § 5427; *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 550, 12 A.2d 775; *Coppola* v. *New York, N.H. & H.R. Co.,* 143 Conn. 109, 112, 119 A.2d 730. The burden of showing that the commission acted illegally or in excess of its authority was upon the plaintiffs. *Stevens* v. *Connecticut Co.,* 86 Conn. 36, 41, 84 A. 361; *Kram* v. *Public Utilities Commission,* supra, 548.

The public utilities commission attached to its order approving the contract three conditions which do not in any way modify the contract, invalidate its order or waive any of the duties imposed upon it by statute. Two of the conditions assert the commission's continuing statutory power over the rates to be charged for water sold to Port Chester and its duty to ensure service by the defendant adequate and suitable to fulfil its franchise obligations to the residents of Connecticut. The other condition embodies the commission's construction of paragraph 5 of the contract. The plaintiffs claim that under this paragraph the defendant becomes obligated to supply Port Chester at all times with 8 million gal-

lons of water per day and that the water available for use in Connecticut will be reduced substantially and will be inadequate. We do not so interpret this provision. The paragraph provides that the defendant is not obligated to sell Port Chester more than 50 per cent of the safe yield of the defendant's existing supply facilities and those of the Mianus development, which safe yield was agreed to be 16 million gallons per day. It then provides that if the supply of water should be curtailed because of unforeseen circumstances or causes beyond the control of the parties, regulations would be established to ensure ratable and equal division of the curtailed supply between the two companies. The commission's interpretation of this paragraph to mean that Port Chester is entitled to not more than 50 per cent of the safe yield of the defendant's supply but in no event to more than 8 million gallons per day, if the safe yield exceeds 16 million gallons per day, is in conformity with the intendment of the parties as expressed in the contract and is correct.

We concur in the conclusion of the court that the plaintiffs have failed to establish that the commission exceeded its authority or that it acted illegally or in abuse of its powers.

There is no error.

In this opinion the other judges concurred.