WOODBURY WATER COMPANY *v.* PUBLIC UTILITIES COMMISSION

NEW MILFORD WATER COMPANY *v.* PUBLIC UTILITIES COMMISSION

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 3, 1977—decision released February 21, 1978

*A. Searle Pinney,* with whom was *David Bennett,* for the appellants (plaintiffs).

*Robert S. Golden, Jr.,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

BOGDANSKI, J. Woodbury Water Company and New Milford Water Company each took an appeal to the Court of Common Pleas from the action of the public utilities commission in denying their applications for a rate increase filed pursuant to §§ 16-19 and 16-19e of the General Statutes.[1] Although there was no formal consolidation of the cases, the appeals were heard together and ordered dismissed by the trial court. From the judgments rendered, the plaintiffs appealed to this court. Because the issues are identical, we will treat both cases in one opinion.

---

[1] "[General Statutes] Sec. 16-19. AMENDMENT OF RATE SCHEDULE; INVESTIGATION AND FINDINGS BY AUTHORITY; HEARINGS . . . . Each public service company shall file any proposed amendment of its existing rates with the authority in such form and in accordance with such reasonable regulations as the authority may prescribe. In the case of a proposed amendment to the rates of any public service company, the authority shall hold a public hearing thereon . . . and shall make such investigation of such proposed amendment of rates as is necessary to determine whether such rates conform to the principles and guidelines set forth in section 16-19e or are unreasonably discriminatory or more or less than just, reasonable and adequate, or that the service furnished by such company is inadequate to or in excess of public necessity and convenience. . . . If the authority finds any proposed amendment of rates to not conform to the principles and guidelines set forth in section 16-19e, or to be unreasonably discriminatory or more or less than just, reasonable and adequate to enable such company to provide properly for the public convenience, necessity and welfare, or the service

The sole assignment of error raises two issues: (1) whether the defendant commission exceeded its authority in denying the requested rate increases, and (2) whether the rates in question are confiscatory. The burden of showing that the commission acted illegally and in excess of its authority is upon the plaintiffs. *Briggs Corporation* v. *Public Utilities Commission,* 148 Conn. 678, 687, 174 A.2d 529; *Greenwich* v. *Greenwich Water Co.,* 145 Conn. 526, 533, 144 A.2d 318. The court concluded that each plaintiff failed to sustain that burden "especially in view of the findings of the commission that Woodbury will receive a return [on equity] of 9.08% and New Milford a return [on equity] of 10.29%."

The plaintiffs are public service companies chartered by the General Assembly to supply water to industrial, commercial and residential customers. The defendant is a public regulatory agency. The parties have agreed that the public utilities control authority, the successor agency of the defendant, will be bound by any decision rendered in these cases.

---

to be inadequate or excessive, it shall determine and prescribe, as appropriate, an adequate service to be furnished or just and reasonable maximum rates and charges to be made by such company. The authority shall issue a final decision on each rate filing within one hundred fifty days from the proposed effective date thereof . . . ."

"[General Statutes] Sec. 16-19e. . . . PUBLIC HEARING . . . . PARTIES TO RATE PROCEEDING. (a) In the exercise of its powers under the provisions of this title, the authority shall examine and regulate . . . the establishment of the level and structure of rates in accordance with the following principles: . . . (4) that the level and structure of rates be sufficient, but no more than sufficient, to allow public service companies to cover their operating and capital costs, to attract needed capital and to maintain their financial integrity, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable; and (5) that the level and structure of rates charged customers shall reflect prudent and efficient management of the franchise operation . . . ."

At the outset, it is appropriate to note that pursuant to § 4-183 (f) of the General Statutes[2] the trial court heard no evidence but determined the cases solely on a review of the record on appeal. Only a limited finding was made by the court. Although the parties entered into a stipulation of facts, the court refused to approve or disapprove that stipulation for the reason that it amounted to nothing more than a request for a finding of facts. Maltbie, Conn. App. Proc. § 126. The court properly refused to act on the stipulation.

With respect to the Woodbury application: The record reveals that after hearing the evidence, the commission proceeded to evaluate that evidence in terms of revenues and expenses and made its finding and decision as follows: *"Finding of Facts.* 1. The present rates charged by the Company are less than just, reasonable and adequate to enable it to provide properly for the public convenience, necessity and welfare. 2. A rate structure which will provide the Company with additional revenues of $7,450 is approved. This increase in revenues will allow the Company a net income of $26,303. 3. The allowed net income of $26,303 will provide the Company with an adequate margin of profit and a return on equity of 9.08%. 4. The additional revenue allowed will result from rates which are not unreasonably discriminatory or more or less than just, reasonable and adequate to enable the Company to provide for the public convenience, necessity and welfare. *Decision.* Based on the foregoing, the amended schedule of rates as filed with the Commission is denied. Additional revenues in the approxi-

---

[2] "The review shall be conducted by the court without a jury and shall be confined to the record. . . ."

mate amount of $7,450 over the annual revenues received by the Company under its present rates are approved . . . ."

With respect to the New Milford application: After hearing the evidence, the commission evaluated that evidence in terms of revenues, meter testing programs, fire protection service, rate base, expenses, and cost of capital, and made its finding and decision as follows: *"Finding of Facts.* 1. The test year for this rate case application is the 12 months ended June 30, 1974. 2. The rate base for the purposes of this application is $1,132,069. 3. The Company's rate of return of 10.7% at the present rates is just, reasonable and adequate to allow the Company to fulfill its statutory duty to the public. 4. The allowed net income of $122,291 will provide the Company with an adequate margin of profit and a return on equity of 10.29%. 5. The earnings produced by the current level of rates is sufficient to enable the Company to provide properly for the public convenience, necessity and welfare. 6. In consideration of the adjustments made by the Commission as detailed above, the increase in revenues sought by the Company in the proposed amendment to the existing schedule of rates on file is denied. 7. The Company has failed to sustain its burden of proof to demonstrate its need for the increased revenues requested. *Decision.* Based on the foregoing, the amended schedule of rates as filed with the Commission is denied."

On an appeal of the present cases, the trial court's function was "a review of the proceedings before the commission to determine whether the action appealed from was legal. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 354, 64 A.2d 330; *Kram*

v. *Public Utilities Commission,* 126 Conn. 543, 550, 12 A.2d 775." *Connecticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 329, 269 A.2d 276. Specifically, the court's task was to determine on the record whether there was a logical and rational basis for the decision of the commission or whether, in the light of the evidence, the commission had acted illegally or in abuse of its discretion. Id., 328. "A conclusion of the commission not legally supported by the evidence would constitute an abuse of its powers. The weight and credibility of the evidence offered are, however, matters within the province of the commission." *Brook Ledge, Inc.* v. *Public Utilities Commission,* 145 Conn. 617, 619, 145 A.2d 590; see *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 37 A. 1080. The trial court is not to substitute its own judgment or discretion for that of the commission. *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 65, 127 A.2d 48; *Conley* v. *Board of Education,* 143 Conn. 488, 498, 123 A.2d 747.

Utilizing those basic principles and restricting itself to the evidence before the commission, the trial court in this case would have found ample evidence in the record to support the commission's conclusions and to justify the denials of the requested rate increases. In view of the evidence printed in the appendices to the commission's briefs, which fully supports the commission's findings, and in view of the guidelines which the commission is required to follow as set forth in § 16-19e of the General Statutes,[3] we conclude that the trial court did not abuse its discretion in sustaining the actions of the commission.

---

[3] See footnote 1, supra.

The plaintiffs further contend "that the rates in question are . . . confiscatory." The constitutional guidelines for determining whether utility rates are confiscatory were enunciated by the United States Supreme Court in the case of *Federal Power Commission* v. *Hope Natural Gas Co.*, 320 U.S. 591, 64 S. Ct. 281, 88 L. Ed. 333. The court noted "that the Commission was not bound to the use of any single formula or combination of formulae in determining rates. Its rate-making function, moreover, involves the making of 'pragmatic adjustments.' . . . [*Federal Power Commission* v. *Natural Gas Pipeline Co.*, 315 U.S. 575, 586, 62 S. Ct. 736, 86 L. Ed. 1037]. And when the Commission's order is challenged in the courts, the question is whether that order 'viewed in its entirety' meets the requirements of the . . . [legislation]. Id., p. 586. . . . [I]t is the result reached not the method employed which is controlling. [Citations omitted.] It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order . . . carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. [Citations omitted.] The rate-making process . . . involves a balancing of the investor and consumer interests." *Federal Power Commission* v. *Hope Natural Gas Co.*, supra, 602–603.

Applying those constitutional guidelines to the commission's findings, particularly with reference to the plaintiffs' returns on equity of 9.08 percent and 10.29 percent, we conclude that the trial court did not err in finding that the rates in question were not confiscatory.

One final matter merits discussion. The plaintiffs, as wholly owned subsidiaries of General Waterworks Corporation, which, in turn, is a wholly owned subsidiary of I.U. International, join with I.U. International in the annual filing of a consolidated federal income tax return. Each plaintiff annually computes its federal income tax liability as if it were a separate company in accordance with the Internal Revenue Code and regulations promulgated thereunder. In those years when it has taxable income as a result of that computation, each plaintiff pays to I.U. International a sum equal to the tax so computed and the separate tax computation is incorporated in the consolidated return.

In their request for a finding the plaintiffs made the claim that the trial court erred in failing to require the commission to provide for and to conduct a regulation review hearing before adopting any of the following requirements: "(a) That companies under . . . [the commission's] jurisdiction participating in a consolidated income tax filing compute their income tax expense for rate making purposes by applying to taxable income an effective tax rate in lieu of the statutory rate applicable to individual companies. (b) That the effective tax rate be computed as a percentage derived from dividing the taxable income of members of a consolidated group having taxable income into the total taxable income of the entire consolidated

group. (c) That an effective tax rate be used in determining the Connecticut Business Tax expense for rate making purposes. (d) That current rate case expense allowance be based on a per customer served formula limited to $5.00 per customer served."

In essence, the plaintiffs claim that the commission improperly adopted regulations requiring that an effective tax rate be used in determining federal income or Connecticut business taxes and requiring that a specific formula be used for computing the effective tax rate.[4]

The above standards claimed by the plaintiffs to have been erroneously adopted by the commission cannot be considered as regulations. Rather, they should be viewed more properly as accounting procedures which are not susceptible of general application. It is commonly recognized that public regulatory agencies such as the defendant are constantly faced with varied and complex accounting procedures when considering rate increase applications. To apply the most equitable and proper accounting standards in each case before them, such agencies maintain staffs of accounting and tax experts for advice on such matters in order to exercise proper judgment and discretion in their rate-making process.

Moreover, the commission is not precluded from announcing new standards in an adjudicative proceeding. *N.L.R.B.* v. *Bell Aerospace Co.*, 416 U.S.

---

[4] The plaintiffs further claim that there is a contradiction in the commission's approach to state and federal tax expenditures taken by them. The record reveals that the companies failed to supply the tax expenditure data requested by the commission. The short answer is that the commission need not rely on assertions made by the plaintiffs that are not supported by evidence.

267, 294, 94 S. Ct. 1757, 40 L. Ed. 2d 134. The United States Supreme Court there held that the N.L.R.B. is not required to proceed by rule making, rather than by adjudication, in determining whether buyers are managerial employees. In view of the large number of buyers employed in manufacturing, wholesale and retail units, and the wide variety of buyers' duties, depending on the company or industry, any generalized standard would have no more than marginal utility, and the N.L.R.B. thus has reason to proceed with caution and to develop its standards in a case-by-case manner. *N.L.R.B.* v. *Bell Aerospace Co.*, supra, 290–95.

In the instant case, the treatment of taxes as an expense is not one that lends itself to rule making. There are many provisions of the tax code which permit a business any number of ways for varying the design of its taxes. Moreover, the tax code constantly changes. Any attempt to generalize standards on the treatment of taxes as an expense would have no more than marginal utility. The defendant commission thus has reason to proceed with caution and to develop its standards in a case-by-case manner. The regulatory agency must remain flexible in order to meet its overall obligation of setting just and reasonable rates that balance the interests of the consumer as well as that of the company.

There is no error.

In this opinion the other judges concurred.