[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
Providence Water Supply Board, the Concerned Citizens of Sterling, et al, (plaintiffs) appeal from a decision of the State of Connecticut Department of Environmental Protection (DEP) granting to Exeter Energy Limited Partnership (Exeter) a permit to construct a solid waste facility (CGS 22a-208a), a permit to construct a potential air contaminant source (CGS 22a-174), and two permits to discharge to the waters of the state (CGS 22a-430) for a tire-burning resource recovery facility.
A public hearing on the application was held on September 15, 29 and 30 and October 6, 1988.
On March 21, 1989, the Hearing Officer of the DEP issued a Proposed Decision recommending issuance of the requested permits with certain conditions.
The applicant and plaintiffs here objected to the Proposed Decision recommending issuance of the requested permits with certain conditions.
On April 18, 1989, the Commissioner of Environmental Protection (Commissioner) heard oral argument from all parties and intervenors on the Proposed Decision.
On June 21, 1989, the Commissioner rendered a Final Decision granting the requested permits.
On July 14, 1989, the plaintiffs filed the instant administrative appeal challenging the issuance of the permits by the DEP to Exeter.
The parties have stipulated and the court finds that plaintiffs CT Page 2274 Providence Water Supply Board and Concerned Citizens of Sterling, Inc., have filed a verified intervention petition in the administrative proceedings which are the subject of this appeal, and both plaintiffs were granted intervenor status by the Deputy Commissioner, Department of Environmental Protection.
The plaintiffs claim that: Exeter failed to demonstrate its entitlement to a solid waste permit pursuant to CGS 22a-208a due to the fact that the application filed was incomplete and that Exeter failed to demonstrate that the air compliance permits issued meet the requirements of the federal clean air act or chapter 446c of the Connecticut General Statutes, and that the permits fail to adequately protect the Scituate Reservoir.
Accordingly, the plaintiffs claim that the DEP has acted illegally or in abuse of its discretion.
DISCUSSION OF LAW
Aggrievement is the standard jurisdictional prerequisite to an appeal from any administrative agency decision. See Local 1303 
Local 1378, 191 Conn. at 177. Thus, the question of aggrievement is a jurisdictional one, and claims of aggrievement present an issue of fact for the determination of the court, with the burden of proving aggrievement resting upon the plaintiff who has alleged it. Nader v. Altermatt, 166 Conn. 43, 59 (1974)
Pursuant to CGS 22a-19 and the stipulation of facts herein cited, the court finds that plaintiffs Providence Water Supply Board and the Concerned Citizens of Sterling, Inc., only, are aggrieved.
In administrative appeals, the court cannot substitute its judgment for that legally vested in the agency. This limitation on the scope of review by the court in an administrative appeal is fundamental. See Cos Cob Volunteer Fire Co. No. 1, Inc. v. FOIC,212 Conn. 100, 105 (1989).
The court must determine on the record whether there is a logical and rational basis for the decision or whether, in light of the evidence, the agency has acted illegally or in abuse of its discretion. The burden of proving that the agency acted illegally land in excess of its authority is on the one asserting it. Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258,260 (1978).
The function of the court in reviewing an agency's action is not to reach its own conclusions upon the subordinate facts, but only to determine whether the conclusion of the agency on such facts is unreasonable or illogical. Campisi v. Liquor Control Commission, CT Page 2275175 Conn. 295, 296 (1978). Review of an appeal taken from the order of an administrative agency, therefore, is limited to determining whether the agency's findings are supported by substantial and competent evidence and whether the agency's action exceeds its statutory authority or constitutes an abuse of discretion. State v. Commission on Human Rights Opportunities, 211 Conn. 464, 477 (1989).
Conclusions reached by an administrative body must be upheld by the court if they are supported by the evidence that was before the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the administrative agency supports the action taken. Harrison v. Commissioner, 204 Conn. 672, 680 (1987).
I. The plaintiffs claim that Exeter did not submit a complete application for a solid waste permit pursuant to CGS 22a-208a and22a-209 and therefore the commissioner should not have granted said solid waste permit to Exeter.
 A. The plaintiffs claim that the first deficiency in the application is Exeter's failure to designate any facilities to be used for the ultimate disposal of waste, residues and recyclable materials which would be produced as a result of the tire burning process of the project. The plaintiffs further allege that Exeter has failed to demonstrate that it has commitments for said disposal of materials from tire burning process for the first five years of operation.
The plaintiffs cite no statutory or regulatory requirements for such designation and commitments for disposal. A review of Sec. 22a-209-4 (RCSA) indicates no such specific requirement. The regulation merely requires Exeter to include with its application information concerning the "facilities for the ultimate disposal of the wastes, residues, and recycled materials. . . ." 22a-209-4b(2)(B)(iii). (RCSA).
The regulation further states that at (b) that "an application will not be deemed complete until all information required by the statutes or regulations or otherwise requested by the Commissioner have been submitted in proper form." (Emphasis added).
There is no statutory or regulatory requirement for the information the plaintiffs claim as wanting. The plaintiffs' apparent claim of a deficiency in information provided by Exeter arises from a request for said information from staff members of the agency.
As subsection (b) hereinabove indicated the applicant must provide such other information (other than that which is required by statute or regulation) as "required" by the commissioner. It is apparent that although the staff sought the information, the CT Page 2276 commissioner did not require it as a condition precedent to the granting of the permit.
Although the interpretation of statutes is ultimately a question of law; Connecticut Hospital Association, Inc. v. Commission on Hospitals Health Care, 200 Conn. 133, 140; it is the well established practice of this court to accord great deference to the construction given a statute by the agency charged with its enforcement.
The commissioner concluded that the information provided by Exeter satisfied the statutory, regulatory and the agency's requirements
The commissioner did not overlook the concerns of the plaintiffs in this area. The commissioner has ordered that as a condition precedent to the operation of the plant the applicant must provide proof to the DEP of its commitments for disposal of the maximum amount of residue and bypass material which may be generated by the facility during the first five years of operation. See Final Decision p. 13.
B. The plaintiffs next claim that the application of Exeter for a solid waste permit was incomplete in that Exeter did not provide a list of all solid waste facilities with which Exeter or its partners have, are or have been associated, and their positions and responsibilities pursuant to CGS 22a-409-4 (b)(1) of the Regulations of Connecticut State Agencies (RCSA).
Again, the commissioner did not ignore the issue raised by the plaintiffs. The commissioner by way of her adopting the Proposed Decision, specifically found that in the event specifics were omitted, "that limited information (not included) was both known to the DEP prior to the hearing and made patently obvious on the record. The undersigned has been in no way hindered from making a finding pursuant to 22a-409-4 (d)(1)(D): the record amply shows no contravention of this regulation."
C. The plaintiffs next assert that the application of Exeter does not specify "approximate volume of each waste type to be handled, a list of types of facility users and municipalities served, associated facilities for the ultimate disposal of the wastes, residues and recycled materials, and contingency plans for period of shutdown or breakdown," as is required pursuant to CGS 22a-209-4
(b)(iii).
A review by this court of the transcripts of the hearings and the Proposed Decision, more specifically the findings of fact in paragraphs #22 and #23, inter alia indicate that the record is complete in this regard. CT Page 2277
It is noteworthy, relevant to all the alleged deficiencies of Exeter's application, that there has, in effect, been a finding of completeness of the application by the agency, note paragraph #20 of the Proposed Decision. It is the DEP staff which makes the determination as to completeness of an application as a prerequisite to a public hearing on that application. The agency then determines whether the information in the application is sufficient to demonstrate the ability of the facility to comply with the requirements to these regulations. 22a-209-4-(b) of RCSA. The agency is entitle to find that the information provided by the applicant is sufficient to meet the requirements of its duly adopted regulations.
The plaintiffs have failed in demonstrating the incompleteness of Exeter's application for a solid waste management permit. II. The plaintiffs next claim that the applicant (Exeter) failed to demonstrate that the air compliance permits issued by the DEP did meet the requirements mandated by certain state and federal statutes and regulations.
A. The DEP regulations, pursuant to Chapter 446c of the General Statutes, governing abatement of air pollution, were amended effective February 1, 1989. The plaintiffs claim that the amendments are applicable to Exeter's project and apply to Exeter's permit application and that these amendments require Exeter to comply with the Prevention of Significant Deterioration (PSD) regulations. The commissioner found the amendments not to apply to this applicant.
The amendments pursuant to CGS 22a-174-3 (d)(1) of the regulations were interpreted by the commissioner, the very one who proposed the regulations, as exempting from their applicability those facilities for which public notice of a complete application was published before May 1, 1989.
Exeter's application for an air emissions permit was completed by September 10, 1987. Notice of Exeter's complete application and the scheduling of public hearings was published on August 7, 1988 and the hearings were completed by October 6, 1988. The Final Decision (at page 3) finds that the new regulations themselves provide that certain requirements do not apply to complete applications which were pending on the effective date of the amendments (May 1, 1989).
 B. The plaintiffs next claim that the regulatory amendments contained a requirement that the applicant had to undergo a Prevention of Significant Deterioration (PSD) review and that this requirement is independently required by the federal government. The commissioner in her Final Decision finds that CGS Z2a-174-3(d)(1) of the amended regulations provides that "sources for which public notice CT Page 2278 of a complete application was published before May 1, 1989, are not subject to this new requirement." The decision states that "Although the exemption from the PSD provision is contained in the section regarding permits to operate, the exemption applies to those whose complete applications for a permit to construct were public noticed by a certain date, regardless of whether a PSD review had already been done or a construction permit had ever been issued.
The Commissioner did specifically find that the "grandfather" provision of CGS 22a-174-3 (d)(1) applies and Exeter's application is governed by the old requirements regarding Prevention of Significant Deterioration review. Under these requirements both the DEP and the United States Environmental Protection Agency determined that a PSD review as not necessary. The commissioner did not determine whether the regulatory amendments applied to pending applications but did explicitly determine that the requirements contained in the subject amendments "would not alter the manner ir ir in which the DEP has reviewed the Exeter application or the outcome of the review." Final Decision, page 4. In other words, in the event that the amendments were applicable to the defendant's application, the requirements contained in those amendments would not effect the review of Exeter's application or that which Exeter must accomplish to comply.
Federal PSD regulations would only apply to certain plants of more than 250 million British Thermal Units (BTUs) per hour heat input. See 40 C.F.R. § 52.21 (b)(i)(a). It is noted in the Proposed Decision that this requirement applies to each incinerator, and the maximum rates of each of the applicant's incinerators was not at the 250 million BTU level. Proposed Decision, p. 35. The findings of the hearing officer in the Proposed Decision were adopted by the commissioner in her Final Decision. Therefore, the federal PSD review would not apply to the subject facility.
 D. Lastly, the plaintiffs claim that the conditions imposed by the DEP on Exeter in granting air compliance permits fail to adequately protect the Scituate Reservoir and the interests of plaintiff City of Providence Water Supply Board.
The DEP found that monitoring in Rhode Island is warranted to insure protection of the water quality in the Scituate watershed.
The Hearing Officer did not require a specific plan to monitor the water quality but did recommend as a condition of the permit that a reasonable monitoring plan acceptable to the DEP must be put into effect. CT Page 2279
The plaintiffs complain the failure of the DEP to require a specific plan with no other standard than "reasonableness" gives the plaintiff Providence Water Supply Board no means to challenge the adequacy of any monitoring plan which is subsequently adopted. The plaintiffs assert that the absence of any perameters whatsoever to the monitoring plan deprives the court of the ability to meaningfully review the commissioner's decision requiring the applicant to adopt a monitoring system.
Considering the substantial data before the commissioner, it was not an abuse of the broad grant of regulatory authority for the commissioner to seek a cooperative effort by all parties to establish a monitoring program, satisfactory to the commissioner and other parties, prior to the granting of the permit.
The plaintiffs have not briefed their claims concerning the granting by the DEP of two permits to discharge to the waters of the state pursuant to CGS 22a-430 and therefore the court considers said claim abandoned.
An administrative agency is presumed to have done its duty legally and properly. Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349, 356 (1975).
The burden of proving that the agency acted illegally and in excess of its authority is on the one asserting it.
The plaintiffs have failed to establish that the agency has acted illegally or in the abuse of its discretion.
The court's findings herein are dispositive of the appeal and the court will not consider the defenses of res judicata and collateral estoppel.
The appeal is dismissed.
MIANO, J. Judge of the Superior Court