[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the department of public utility control (DPUC) authorizing the Connecticut Water Company (CWC) to increase the rates it charges its customers by 18.46% annually, on and after the date of the decision, September 13, 1989. CWC appeals on the basis that the DPUC acted arbitrarily and erroneously in denying its CT Page 3043 application for a 25.25% rate increase and that the increase it did authorize is so low as to be confiscatory. The town of South Windsor and the office of consumer counsel, representing all other CWC rate payers, appeal on the basis that the increase allowed by the DPUC was excessive. The towns of Enfield, Coventry, and Windsor Locks joined in the appeal of the town of South Windsor.
On the basis of facts in the record and stipulations by all parties, the court finds that CWC has a specific legal interest in the subject matter of the DPUC's decision, as distinguished from a general interest concerning the community as a whole, in that the decision seeks to restrict this individual's company's revenues and profits. Likewise, the town of South Windsor as a substantial rate payer and the other rate payers represented by the office of consumer counsel have such an interest in that the decision would result in an increase in the charges they pay for water consumption, as distinct from other water consumers in the state. The court concludes, therefore, that these parties are aggrieved and have standing to appeal within the rule enunciated in State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295,299-300 (1987).
The record reflects that CWC's application for the rate increase was assigned for a hearing to a panel of three commissioners of the public utilities control authority, pursuant to C.G.S. 16-2(c). Public hearings were conducted in 1989 on June 1, June 5, June 12, June 13, June 14, June 15, June 16, June 23, June 27, June 29, and July 12. The DPUC conducted an audit of CWC's books and records and inspected its facilities. In addition to comments from individual ratepayers and members of the public, the DPUC received expert testimony on technical and accounting questions in behalf of CWC, the town, and OCC. On the basis of this record, the court concludes that all parties had ample opportunity to present complete relevant factual data to DPUC on which it could base its decision.
The appellant CWC's claims of error are as follows;
 1. That the DPUC failed to take into account CWC's unique investment risk and, therefore, arbitrarily and unreasonably restricted its return on equity (ROE).
 2. That the ROE allowed by the DPUC restricts CWC's ability to raise necessary capital and is, therefore, inadequate as a matter of law under the rules of Bluefield Water Works 
CT Page 3044 Improvement Co. v. Public Service Commission, 262 U.S. 678 (1923) and Federal Power Commission v. Hope Natural Gas, 320 U.S. 591 (1944).
 3. That DPUC erred in assuming a 2% growth factor or, alternatively, it erred in not making proper expense adjustments to conform to such a growth rate.
 4. That DPUC erred in disallowing, for rate approval purposes, proposed expenses for a water conservation program.
 5. That DPUC erred in ordering certain rate structure modifications.
 6. That DPUC erred in disallowing, for rate approval purposes, certain "operating" expenses.
 7. That DPUC erred in disallowing, for rate approval purposes, lobbying expenses.
 8. That DPUC erred in disallowing depreciation on contributions in aid of construction (CIAC) on 1989 and subsequent plant additions.
 9. That DPUC erred in disallowing for rate approval purposes, certain expenses associated with the operation of its pension plan.
 10. That DPUC erred in calculating certain expenses.
 11. That DPUC erred in calculating the effect of taxes on CWC's revenues.,
The claims of error advanced by the appellant town of South Windsor and the office of consumer counsel are as follows:
 1. The DPUC authorized an excessive profit level in that it allowed a return on equity (ROE) of 13.6%.
 2. The DPUC erred in allowing CWC to include in its rate base pension expenses, certain payroll expenses, post-retirement benefit expenses, depreciation on contributions in aid of construction (CIAC), and expenses incurred in prior rate submission cases. CT Page 3045
 3. The rate structure approved by the DPUC violates the guidelines established by title 16 of the general statutes concerning water conservation measures.
In an appeal from a decision of the DPUC, the court's task is limited to determine whether there was a logical and rational basis in the evidence for the DPUC's decision or whether the DPUC acted illegally or in abuse of its discretion. The court may not substitute its own judgment or discretion for that of the DPUC. Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258, 263 (1978). With respect to the rate-making function itself, the same court held as follows:
 The Commission is not bound to the use of any single formula or combination of formulae in determining rates. Its rate-making function, moreover, involves the making of `pragmatic adjustments' . . . . And when the Commission's order is challenged in the courts, the question is whether that order `viewed in its entirety' meets the requirements of the . . . [legislation] . . . .[I]t is the result reached not the method employed which is controlling. It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry . . . is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order . . . carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. The rate-making process . . . involves a balancing of the investor and consumer interests. Ibid. p. 264; citing Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591.
One common issue in contention between the two opposing groups of appellants is the rate of return on equity allowed by the DPUC. That rate, or cost factor, in the DPUC's decision is 13.6%. The appellant CWC claims it is too low; the appellants town of South Windsor and the OCC claim it is too high. An examination of the record and the DPUC's decision reveals that the DPUC heard and considered evidence from expert witnesses in support of all viewpoints. It followed the same general methodology, a discounted cash flow analysis, which the CT Page 3046 appellants utilized in presenting their conflicting suggested return on equity percentages. These percentages ranged from the low of 12.0% recommended by one of OCC's experts to a high of 14.5% recommended by the CWC's expert. The differences were caused by different assumptions with respect to dividend yields, growth rates and stock issuance costs. The court is not persuaded that any of the DPUC's assumptions was so unfounded as to produce an unreasonable result. The DPUC determined that the 13.6% ROE permits an overall rate of return on the rate base of 10.83%. Applying the principles set forth above, this court cannot conclude that the DPUC acted arbitrarily or in abuse of its discretion or that the rates it set are confiscatory or unjust. Specifically, the appellants have not sustained their burden of proving that the ROE of 13.6% and the resulting rate of return of 10.83% are unreasonable in light of all of the evidence and the methodology employed by the DPUC.
Another common area of contention is the treatment by the DPUC of various items of expense claimed by CWC and disputed by the town and the OCC. A review of the record and the DPUC's decision satisfies the court that the DPUC had an adequate basis in the evidence for its treatment of these expense items and, as indicated above, the rates it ultimately set are neither unjust nor unreasonable. In particular, the court considers the DPUC's treatment of depreciation expense on contributions in aid of construction (CIAC) as completely reasonable. This was a subject which produced considerable argument by counsel during the hearing on this appeal, and, as expected, the two sets of appellants take diametrically opposing viewpoints. The DPUC has permitted this expense item for ratemaking purposes for water companies for many years. In its decision in this case, it announced its conclusion, which is in agreement with the position of the OCC on the subject, that "(t)here is no sound justification for continuation of the practice. . . ." However, the DPUC also found that disallowance of that expense at this time, without prior notice, would adversely affect CWC's cash flow and could result in financial instability. For that reason, the DPUC limited application of the new rule to new plant additions and declined to apply it retroactively. This approach strikes the court as eminently reasonable and fair to all parties. Any other action — that is, indefinite continuation or retroactive change — would be either illogical and unfair to the ratepayers or financially hazardous to the utility company.
The third common issue in contention concerns the claim by all appellants, but for different reasons, that the DPUC improperly applied the provisions of Title 16 of the general statutes with respect to promoting water conservation. Specifically, the ratepayer appellants claim that CWC's rate CT Page 3047 structure, as allowed by the DPUC, results in a lower cost per unit as more water is consumed. Such a structure, they argue, encourages usage and is, therefore, "anti-conservational." CWC, on the other hand, claims that the DPUC erred (1) in failing to assume an appropriate reduction in revenues that the company would experience as a result of implementing its own conservation program and (2) in denying CWC an increase in minimum meter charges. With respect to the ratepayers' claims, the DPUC agrees that CWC's rate structure requires certain revisions so as to promote water conservation. It found, however, on the basis of evidence adduced by CWC, that it was not practical to order such revisions in conjunction with the present rate application, but rather such revisions should be ordered in conjunction with the company's next rate filing when the company will have had the time to prepare for such fundamental, structural changes. Section 16-19e(a)(3) of the general statutes provides, in relevant part, that the DPUC "shall examine and regulate. . .the establishment of the level and structure of rates in accordance with the following principles: . . .(3) . . . so as to promote economic development within the state with consideration for energy and water conservation. . . ." This court cannot conclude, on the basis of the record, that the DPUC's decision fails to conform to such a broad and unspecific mandate. On the contrary, in its decision, the DPUC took pains to address the broad issues by ordering specific action in the future. The claims of the CWC with respect to the minimum meter charges and the calculation of the effect on revenues of conservation measures are essentially disagreements with the DPUC over rate-making formulae and facts found from the evidence. This court sees no basis for disturbing the DPUC's findings or conclusions in this area.
Finally, the court agrees with the DPUC that the wholesale attack strategy employed by all of the appellants, in which they let loose a "torrent" of claimed errors, has the effect of undermining the appeals in two ways. It dilutes the strongest arguments and it creates the impression that the appellants seek a re-trial of the agency factfinding proceedings in this court. See State v. Pelletier, 209 Conn. 564,567 (1989).
For all of the reasons set forth above, the court concludes that the appellants have not sustained their burden of establishing that the DPUC acted illegally or in excess of its authority in approving the contested rate increase. Accordingly, the appellants' appeals are dismissed.
MALONEY, J. CT Page 3048