[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Claude Holcomb appeals the decision of the fair hearing officer upholding the action of the defendant Department of Social Services (department) reducing his state supplement benefits. CT Page 13007
The record reflects the following facts. The plaintiff has severe cerebral palsy and requires a motorized wheelchair for mobility and assistance with his daily activities. Since prior to 1988, the plaintiff has been a recipient of both federal supplemental security income (SSI) and state supplement benefits. Until March 1996, the plaintiff lived alone in a one bedroom apartment. At that time he moved into a two bedroom apartment with another person. In August 1996, the department notified the plaintiff that it intended to reduce his state supplement benefits from $418 a month to $277 a month effective September 1, 1996, because he was no longer eligible for the Conversion Needs Item (CNI) allowance. Later, the department notified the plaintiff that these benefits would be reduced from $277 a month to $145 a month effective October 1, 1996, because his living situation had changed to a shared living arrangement. The plaintiff requested a hearing on these proposed reductions, and the hearing was held on October 8, 1996. At the hearing, the plaintiff appeared without representation and communicated through a communication board. On October 18, 1997, the hearing officer issued a decision denying the plaintiff's appeal. From that decision, the plaintiff filed this appeal.
The hearing officer concluded that "[because] the appellant moved to another living arrangement and the number of people in the living arrangement changed, the department correctly proposed to reduce the appellant's State Supplement award by the amount of the CNI ($140.90)." (Return of Record ("ROR"), p. 4.) The hearing officer also concluded that since the plaintiff was in a shared living arrangement his shelter allowance should be reduced to the maximum allowance of $200 monthly. (ROR, p. 4.)
In this appeal, the plaintiff claims that the department's decision is erroneous on the law, clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and an abuse of discretion. See General Statutes §4-183(j). The heart of his appeal is that the regulation that was applied to reduce his benefits violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Specifically, the plaintiff argues that:
1) the department's eligibility criteria for the CNI precludes individuals with a progressive disability from receiving the benefit of the CNI; CT Page 13008
2) the department's administration of the CNI violates the mandate of the ADA that a public entity not utilize criteria that substantially impair the accomplishment of the objectives of the entity's program;
3) the department has an obligation under the ADA to make a reasonable modification of its policies.
(Plaintiff's Memorandum, pp. 8-10.) In addition, the plaintiff argues that even if the court finds that the CNI was properly eliminated, the plaintiffs monthly shelter allowance should not have been reduced from $400 based on living alone to $200 for shared living.
A basic principle of administrative law is that the scope of the court's review is very limited. "Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v.Dept. of Public Utilities Control, 219 Conn. 51, 57,591 A.2d 1231 (1991); Woodbury Water Co. v. Public Utilities Commission,174 Conn. 258, 260, 386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency,226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. State Board ofLabor Relations, 216 Conn. 253, 262, 579 A.2d 505 (1990); Baerstv. State Board of Education, 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v. Commissioner of SocialServices, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906
(1995). General Statutes § 4 183(j) in part provides:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
CT Page 13009
"Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . NewHaven v. Freedom of Information Commission, 205 Conn. 767, 774,535 A.2d 1297 (1988)." (Internal quotation marks omitted.)Perkins v. Freedom of Information Commission, 228 Conn. 158,164-65 (1993).
The regulations governing the state supplement benefits program are found in the Uniform Policy Manual. The particular regulation at issue here is the special needs provision entitled "Conversion Needs Item." UPM § 4525.65 applies to individuals, such as the plaintiff, who received state supplement benefits prior to January 1, 1988. It was promulgated to alleviate the effect of the needs limits that became effective on January 1, 1988 by maintaining the level of benefits for those individuals like the plaintiff. It reads in part:
A. Provisions
 1. A Conversion Need Item (CNI) amount exists only if an assistance unit experiences a lower benefit amount as the direct result of the Department's implementation of AABD needs limits which are effective January 1, 1988.
 2. The CNI represents the amount of the difference between the total of the unit's basic needs prior to January 1988, and the basic needs amount which resulted from the conversion of the new limits.
 3. The CNI is used to maintain the unit's basic needs at the pre-January 1988 level unless at least one of the following circumstances exists:
 a. the assistance unit moves to another living arrangement; or
 b. the number of people living in the living arrangement changes; or
 c. the amount of rent is reduced as the result of the living arrangement becoming subsidized housing; or
CT Page 13010
 d. the status of the living arrangement changes from ownership by the assistance unit to rental by the unit, or vice versa; or
 e. the unit is reapplying following a discontinuance which occurred after conversion took place.
The hearing officer found that the plaintiff had moved to another living arrangement and the number of people in the living arrangement changed so that the CNI was no longer available to the plaintiff. (ROR, p. 4.) There is substantial evidence in the record to support that finding.
The plaintiff argues that because the move to another living arrangement was due to his worsening disability, the ADA protects him from this state regulation. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." A "qualified individual with a disability" is defined in 42 U.S.C. § 12131
(2) as
 . . . an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
It is the plaintiff's burden to show his disability, the denial of a public benefit, and that such "denial of benefits, or discrimination was by reason of the plaintiff's disability."Kornblau v. Dade County, 86 F.3d 193, 194 (1996); Cameron v.Alander, 39 Conn. App. 216, 222-23, cert denied, 235 Conn. 924
(1995). While the plaintiffs disability is not in dispute, as is the fact that he receives benefits from the state, he cannot show on this record that the elimination of the CNI allowance was by reason of his disability.
At the agency hearing, the plaintiff presented a letter dated January 16, 1996 from a doctor of Newington Children's Center which stated the following: CT Page 13011
 Claude Holcomb is a patient that I have known for a long period of time. He is a [sic] athetoid CP quad with fixed contractures on the lower extremities. He has minimal function in his left hand that allows him to operate a power wheelchair and a communication board. At the present time he requires four hours of home health aide services per day in order to get up, get dressed, get fed and then to get undressed and in bed at night. Major difficulties have occurred because of his contractures in terms of being able to turn in bed at night, and he requires at this particular point to be turned twice at night in order to get through the night successfully.
(ROR, p. 34.) The plaintiff also offered a written statement that read as follows:
 1. I have a doctor's order to have someone live with me so I don't have to go to an institution.
 2. When I received $418 per month, the person did not pay rent because I was able to meet my monthly needs.
 3. The lease is in my name only but they are taking it out of context.
 4. I moved in the same building from a 1 bedroom to a 2 bedroom because my medical condition has progressed and I need a live in personal care attendant. This is not a change of address. I have applied for a section 8 subsidy and am on a long waiting list. I am currently number 4573.
(ROR, p. 33.)[1]
While his decision to change his living arrangements may have been triggered by the plaintiff's worsening disability, he has not shown that the department's application of the regulation discriminated against him on the basis of his disability. The plaintiff has not shown that the regulation affects him differently or more severely than other recipients, whether they are disabled or nondisabled. The reduction in the CNI takes place as a result of a change in living arrangements, regardless of the reason for the change. Nondisabled state supplement recipients also suffer reductions in the CNI if they meet any of the circumstances listed in UPM § 4525.65 A.3. The reduction in the CNI is applied in an evenhanded manner to anyone whose CT Page 13012 living arrangement changes. The plaintiff has not shown that the regulation violates the ADA.
Further, the hearing officer properly applied the regulations as to the reduction of the shelter allowance from $400 to $200. Even though the plaintiff had an arrangement with his roommate to exchange personal care services for rent, UPM § 4520.15C.2 provides for a maximum $200 shelter allowance if the plaintiff shares a bathroom or kitchen, regardless of who pays the rent. Therefore, the hearing officer's conclusion is supported by substantial evidence in the record.
The appeal is dismissed.
DiPentima, J.