[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Sandra Salmon, appeals the decision of the defendant, Department of Public Health and Addiction Services, finding that the plaintiff, a nurse's aide, abused a patient at the Shelton Lakes Residence and Health Care Center (Shelton Lakes). The department acted pursuant to General Statutes §§19a-14 and 20-102cc. The plaintiff appeals pursuant to General Statutes § 4-183.
The record reveals the following facts. The plaintiff is a registered nurse's aide as defined in General Statutes §20-102aa. In August, 1993, the plaintiff was employed as a nurse's aide at Shelton Lakes. On August 18, 1993, Shelton Lakes terminated the plaintiff's employment based on an accusation of patient abuse, and reported the accusation to the department. On CT Page 3005 April 27, 1994, the department issued a statement of charges alleging: "[d]uring August 1993, [the plaintiff] abused resident v. Tschauder while rendering incontinent care, by using vulgar and inappropriate language and intimidating the resident," in violation of 42 U.S.C. § 395i-3 (c)(1)(A)(ii) and/or42 U.S.C. § 1395i-3 (g)(1)(C). (ROR, Vol. 2, Item B.)
By letter dated May 9, 1994, the department notified the plaintiff that the charges against her had been dismissed for insufficient evidence. (ROR Vol. 2, Item C.) On May 16, 1994, Mary Crowley, administrator at Shelton Lakes, wrote a letter to Donna Butaine Brewer, chief hearing officer at the department, stating that it was her understanding, "from our telephone conversation today, that at no time was the complaining resident interviewed by your department and, therefore, you are reopening the case as of today." (ROR, Vol. 2, Item D.) On May 20, 1994, the department notified the plaintiff that the letter of dismissal had been sent out in error and referenced the April 27, 1994 statement of charges. (ROR, Vol. 2, Item E.)
On August 16, 1994, the department issued to the plaintiff a notice of hearing on the April 27, 1994 charges. (ROR, Vol. 2, Item B.) The plaintiff filed an answer to the statement of charges on September 4, 1994. (ROR, Vol. 2, Item 1.) A hearing before a department hearing officer was held on December 16, 1994. At the hearing, the plaintiff, the resident, Vivian Tschauder, the Shelton Lakes administrator, Mary Crowley, and the Shelton Lakes director of nursing services, Mary Frances Wolf, testified. (See ROR, Vol. 4, Transcript.)
At the hearing, Tschauder testified: "I was all naked there and she's wiping me and she said that's pussy, she kept wiping me, wiping me, saying pussy, pussy, pussy, all the time I'm — away from it all. I couldn't." (ROR, Vol. 4, Transcript, p. 15.) Tschauder further testified that she "was there just naked and helpless — couldn't get away from it." (ROR, Vol. 4, Transcript, pp. 16-17.) Tschauder also stated that she "was very embarrassed and upset." (ROR, Vol. 4, Transcript, p. 15.) She testified that she told a nurse's aide, who told the nurse in charge, and that both Wolf and Crowley spoke to her regarding the incident. (ROR, Vol. 4, Transcript, pp. 23-26.)
At the hearing, the plaintiff denied ever physically or verbally abusing Tschauder. (ROR, Vol. 4, Transcript, p. 46.) The plaintiff testified that the night before the alleged abuse CT Page 3006 occurred, she had a dispute regarding bathing a patient with Diane Thorpe, the nurse's aide who reported the Tschauder accusation to the head nurse. The plaintiff stated that on the night before the accusation, she reported Thorpe to the supervisor regarding the bath dispute, who gave Thorpe a written warning. The plaintiff testified that Thorpe told her on that night she would "get" the plaintiff. (ROR, Vol. 4, Transcript, pp. 100-104.)
The plaintiff called Crowley and Wolf to testify at the hearing. Crowley testified regarding her investigation of the incident and termination of the plaintiff's employment at the facility. (ROR, Vol. 4, Transcript, pp. 48-78, 89-99.) Wolf testified regarding Tschauder's physical and mental condition. (ROR, Vol. 4, Transcript, pp. 78-89.)
The hearing officer issued a proposed final decision dated January 20, 1995, which was adopted February 15, 1995 as the final decision by the commissioner of public health. (ROR, Vol. 1, pp. 1-6, Memorandum of Decision dated 2/15/95.) In that decision, the commissioner found that the plaintiff abused the patient by vulgar and inappropriate language and intimidation. The hearing officer found that Tschauder's testimony was more credible than the plaintiff's. The hearing officer specifically found that Tschauder "has nothing to gain by fabricating a story, as Respondent's attorney suggested she was doing. She was consistent in the main points of her testimony on both direct and cross examinations. She told not only Diane Thorpe, but also Mary Crowley and Mary Francis [sic] Wolf what had happened." (ROR, Vol. 1, pp. 1-6, Memorandum of Decision dated February 15, 1995.)
On February 27, 1995, the commissioner sent a letter to the plaintiff's attorney notifying him that the February 15, 1995 final decision had been sent in error, because the department had not been aware that the plaintiff had timely requested an opportunity to file exceptions to the proposed final decision and present oral argument prior to the February 15, 1995 issuance of the decision. (ROR, Vol. 3, Correspondence, p. 33.) Both parties filed briefs and oral argument was heard on March 24, 1995. (ROR, Vol. 3, Correspondence, pp. 23-32.) Thereafter, on April 25, 1995, the acting commissioner issued a final decision adopting the January 20, 1995 proposed final decision of the hearing officer finding patient abuse based on the use of vulgar and inappropriate language. The final decision further stated that the proposed final decision was "incorporated herein only to the CT Page 3007 extent that it deals with the use of vulgar and inappropriate language." (ROR, Vol. 1, pp. 1a-7a, Final decision dated 4/25/95.) The plaintiff filed a timely appeal of the department's decision on June 8, 1995.
The plaintiff raises a myriad of issues in her appeal. In addition, she filed a motion to present additional evidence under General Statutes § 4-183 (h), which the court decides in a separate contemporaneous ruling. Her issues on appeal can be categorized as jurisdictional, procedural and substantive.
There are three grounds upon which plaintiff relies to support her claim that this court lacks jurisdiction. She first argues that the department lacked the authority to pursue charges based solely on federal law. Secondly, the statement of charges against the plaintiff only referred to federal law and did not refer to the appropriate state statute regarding improper conduct of a nurse's aides, General Statutes § 20-102cc. Accordingly, the plaintiff argues, no jurisdiction is supplied by the existence of § 20-102cc. Finally, the plaintiff claims that after it dismissed the complaint against her, the department had no authority to proceed further with the case.
The court must address the claims of lack of subject matter jurisdiction before proceeding further with this case. Gagnon v.Planning Commission, 222 Conn. 294, 297 (1992); Figueroa v. CSBall Bearing, 237 Conn. 1, 4 (1996). "`[I]t is clear that an administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. It cannot modify, abridge or otherwise change the statutory provisions, under which it acquires authority unless the statutes expressly grant it that power.' Waterbury v.Commission on Human Rights Opportunities, 160 Conn. 226, 230,278 A.2d 771 (1971)." Castro v. Viera, 207 Conn. 420, 428 (1988).
As to the first jurisdictional argument, the plaintiff relies on two cases to support her proposition that the legislature did not grant the department authority to prosecute violations of federal law. Both are distinguishable. In Castro v. Viera, supra,207 Conn. 420 (1988), the court held that without an employer/employee relationship, the worker's compensation commissioner has no jurisdiction to hear a claim under § 31-297
(b). In Stern v. Medical Examining Board, 208 Conn. 492
(1988), the court held that the board had no power to revoke a license that had expired prior to the proceeding. In its holding CT Page 3008 the court noted the following:
 In the administrative context, a proper claim for relief serves the equally vital function of establishing the jurisdictional authority of the tribunal. . . . Just recently, we held that the existence of an employee-employer relationship is a jurisdictional fact that must be shown in order to proceed with a claim for workers' compensation benefits. Castro v. Viera, supra, 427-35. Similarly, the death of a decedent is a jurisdictional prerequisite to the administration of an estate in probate proceedings. Ruick v. Twarkins, 171 Conn. 149, 153, 367 A.2d 1380 (1976). These cases stand for the principle that certain jurisdictional facts are essential to establish the statutory jurisdiction of tribunals of limited authority. The existence of these facts "is fundamental to the power to entertain and adjudicate a proceeding on the merits. In short, such facts condition the power to act." Castro v. Viera, supra, 434.
 The critical jurisdictional fact in the present case was the licensure status of the plaintiff at the commencement of the proceedings. The authority of the board is contingent upon a showing that a respondent is a "physician" subject to its disciplinary power. General Statutes § 20-13c. According to § 20-13a(5), a "physician" is any "person licensed pursuant to [chapter 370.]." In its statement of charges, the department did not specify any intention to pursue its options under § 19a-17 for a censure, letter of reprimand or civil penalty. Nor did the department include in its prayer for relief a general request for any administrative action that, in the board's discretion, might be appropriate in this case. Having committed itself to seeking only a license revocation, the department disabled itself from invoking other sanctions theoretically authorized by § 19a-17 as a basis for board jurisdiction. In short, we conclude that the narrowly drawn prayer for relief rendered the case subject to dismissal for lack of jurisdiction.
Id., 501-2. In this case, the statement of charges included the CT Page 3009 following:
 Pursuant to the provisions of General Statutes of Connecticut, § 19a-9, 19a-14, and 42 U.S.C. § 1395i-3
(g)(1)(C), the Department of Public Health and Addiction Services brings the following charges against Sandra Salmon:
 1. Sandra Salmon (hereinafter "respondent") has been at all times referenced in this Statement of Charges, a nurse aide listed on the Connecticut Nurse Aide Registry, having nurse aide registration number 00246138.
 2. During August 1993, respondent was employed as a nurse aide at Shelton Lakes Residence and Health Care Center in Shelton, CT.
 3. During August 1993, respondent abused resident V. Tschauder while rendering incontinent care, by using vulgar and inappropriate language and intimidating the resident.
 4. The above referenced conduct violates 42 U.S.C. § 1395i-3
(c)(1)(A)(ii) and/or 42 U.S.C. § 1395i-3
(g)(1)(C).
 THEREFORE, the Department of Public Health and Addiction Services prays that:
 The Commissioner of Public Health and Addiction Services or her designee, as authorized in 42 U.S.C. § 1395i-3
(g)(1)(C) and in § 19-13-D8t(1) (2) of the Regulations of Connecticut State Agencies, make a finding adverse to the respondent concerning this incident and order any remedy that may be deemed appropriate by law.
(ROR, Vol. 2, Item B, Statement of Charges.)
Unlike Stern v. Medical Examining Board, here the prayer for relief is clearly broad enough to include all remedies authorized by the legislation. Under General Statutes § 20-102cc, the CT Page 3010 department is authorized to "receive, investigate, and prosecute complaints against individuals who are providing or have provided services as a nurse's aide in a chronic and convalescent nursing home or rest home with nursing supervision." The statute further provides that the grounds of such complaints "shall include resident abuse, resident neglect, misappropriation of resident property. . . ." Under a clear reading of § 20-102cc, the legislature granted the department the authority to bring this action against the plaintiff and to make a finding that would be placed on the registry of nurse's aides. There is no jurisdictional bar simply because the department did not cite the authorizing statute.[1]
Nor do the references to the federal statutory provisions destroy the jurisdiction of the department over this case. Those provisions set forth the states' responsibilities for assuring quality of care at skilled nursing facilities, including the investigation of allegations of resident neglect and abuse.42 U.S.C. § 1395i(c) and (g). General Statutes § 20-102cc is the statute arising from that mandate.
The final jurisdictional attack must also fail. This case contains an unfortunate number of missteps by the department up to the final decision. One of these missteps was the series of events starting with the May 9, 1994 letter by the department which informed the plaintiff that the investigation had been concluded and that there was not sufficient evidence to proceed. (ROR, Vol. 2, Item C.) A letter from the administrator of Shelton Lakes followed on May 16, 1994, (ROR, Vol. 2, Item C), and on May 26, 1994 the department sent the plaintiff another letter informing her the earlier letter of dismissal of May 9, 1994 was in error and referring her to the April 27, 1994 statement of charges. The department later issued a notice of hearing with a copy of the statement of charges dated August 16, 1994. (ROR, Vol. 2, Item B.)
The plaintiff argues that the May 9, 1994 letter was a final decision that could not be reopened because the department failed to follow the procedures of §§ 4-182 (c), 20-102cc, and 4-181a(b).
The cases cited by the plaintiff as well as the statutory provisions are determinative only if this is a contested case as defined under § 4-166.[2] A final decision is an agency determination in a contested case. A "contested case" is a proceeding "in which the legal rights, duties or privileges of a CT Page 3011 party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held." General Statutes § 4-166 (2). As is clear from the record, the case had not yet proceeded to the hearing stage, and the department was in the investigatory phase of the case when it sent out the May 9, 1994 letter. No final decision on the merits had entered. Therefore, the provisions of General Statutes §§4-182 (c), 20-102cc and 4-181a(b) do not apply. Furthermore, since the plaintiff was provided with notice and opportunity to be heard on the merits, she has failed to show any prejudice.[3]
For the above reasons, the court rejects the plaintiff's claims that the department lacked jurisdiction to render a decision. Accordingly, the court addresses the procedural and substantive issues raised by the plaintiff.
A basic principle of administrative law is that the scope of the court's review is very limited.
 Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public Utilities Control, 219 Conn. 51, 57, 591 A.2d 1231
(1991); Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258, 260, 386 A.2d 232
(1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262, 579 A.2d 505 (1990); Baerst v. State Board of Education, 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994).
(Internal quotation marks omitted.) Cabasquini v. Commissioner ofSocial Services, 38 Conn. App. 522, 525-26, cert. denied,235 Conn. 906 (1995).
General Statutes § 4-183(j) in part provides: CT Page 3012
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
As to questions of law, the Supreme Court has recently stated that the deferential standard does not apply to a court's review of an "agency's construction of a statute, which is a pure question of law, particularly when the question has not been subjected to prior judicial review." Connecticut Light PowerCo. v. Texas-Ohio Power, Inc., 243 Conn. 635, 644 (1998). Otherwise, deference is accorded to the agency's construction of the statute it is empowered to enforce by applying subsection (6) of General Statutes § 4-183(j). Id., 642.
Turning to the plaintiff's claims of due process violations, the court addresses two of the three arguments that the department engaged in ad hoc decision making. The plaintiff argues that the department did so by failing to adopt interpretive regulations, and by relying on unpublished prior agency decisions. The final argument that the department failed to index its decisions in violation of General Statutes §4-180a fails in light of the testimony elicited at the hearing of this appeal.[4]
Our Supreme Court has recognized the right to due process in administrative proceedings.
 Hearings before administrative agencies, such as this agency, although informal and conducted without regard to the strict rules of evidence, "must be conducted so as not to violate the fundamental rules of natural justice." Connecticut Fund for the Environment, Inc. v. Stamford, 192 Conn. 247, 249, 470 A.2d 1214 (1984); see Pizzola
CT Page 3013 v. Planning Zoning Commission, 167 Conn. 202, 207, 355 A.2d 21 (1974). "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Connecticut Fund for the Environment, Inc. v. Stamford, supra; see Welch v. Zoning Board of Appeals, 158 Conn. 208, 212-13, 257 A.2d 795 (1969).
Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 536
(1987).
The plaintiff argues that the department's failure to promulgate regulations defining improper conduct by nurse's aides resulted in ad hoc decision making that violated her right to due process. She cites the case of Monroe v. Middlebury ConservationCommission 187 Conn. 476, 484-85 (1982). She also argues that the department's reliance on three unpublished agency decisions to find that verbal abuse constituted mental abuse was invalid rule making, citing the case of Salmon Brook Convalescent Home v.Commission of Hospitals and Health Care, 177 Conn. 356 (1979). The court is not persuaded. Under General Statutes § 20-102cc, the department is authorized to make findings as to "resident abuse". The court has not been shown any authority proposing that regulations must be promulgated to define "resident abuse." The two cases relied upon by the plaintiff are not apposite.
In Salmon Brook, the Supreme Court held that rate-setting guidelines used by the commission in denying the plaintiff's application for a rate increase were regulations requiring compliance with the Uniform Administrative Procedures Act (UAPA). In Monroe v. Middlebury Conservation Commission, the Supreme Court held that the water authority could not act on an application for a water supply plan until it published a regional water supply plan. Neither of these cases addresses the situation here, where the department decides whether a particular fact situation falls within the statutory term of "resident abuse". The determination that verbal abuse constitutes resident abuse is not a "rule" requiring UAPA compliance, nor is it an ad hoc determination. Neither the absence of regulations defining resident abuse nor the use of prior agency decisions in its CT Page 3014 analysis of the fact of this case deprives the plaintiff of due process of law.
The plaintiff also claims that the record lacks substantial evidence to support the department's finding that Tschauder was a credible witness. The hearing officer specifically found that Tschauder's testimony was more credible than the plaintiff's. (ROR, Vol. 1, p. 5a.) The findings underlying this are as follows:
 She has nothing to gain by fabricating a story, as Respondent's attorney suggested she was doing. She was consistent in the main points of her testimony on both direct and cross examinations. She told not only Diane Thorpe, but also Mary Crowley and Mary Francis Wolf what had happened. . . . Nothing in Mrs. Tschauder's testimony even hints at any motive for her to want to make trouble for Sandra Salmon. That Diane Thorpe might have had a motive for revenge against the respondent does not account for either Mrs. Tschauder's reports to Mrs. Wolf and Mrs. Crowley or putting herself through the obviously uncomfortable experience of describing this event at the hearing. After hearing her testimony I am not able to discount it as mere fantasy or lies.
(ROR, Vol. 1, p. 5a.) The plaintiff relies on Jutkowitz v.Department of Health Services, 220 Conn. 86, 109-112 (1991) for the proposition that the hearing officer should have obtained expert medical testimony as to Tschauder's credibility. Jutkowitz
did not address the need for expert testimony as to a witness' credibility but rather the need as to professional standards of conduct. The law as to credibility determinations in administrative proceedings is clear.
 A reviewing court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented. . . ." (Internal quotation marks omitted.)
Pet v. Dept. of Health Services, 228 Conn. 651, 668,638 A.2d 6 (1994).
Joyell v. Commissioner of Education, 45 Conn. App. 476, 489, cert. denied 243 Conn. 910 (1997). The hearing officer was in the CT Page 3015 best position to judge by the demeanor and words of Tschauder the reliability of her testimony. There is nothing in the record to show that his assessment of her reliability as a witness was clearly erroneous. The court will not disturb the finding of credibility by the hearing officer.
The plaintiff's final claim is that the department exceeded its statutory authority by finding that vulgar and inappropriate language constituted abuse. The final decision of the department adopted the proposed final decision "only to the extent that it deals with the use of vulgar and inappropriate language." (ROR, Vol. I, pp. 1a-7a, Final Decision dated April 24, 1995.)[5] The hearing officer had found that Tschauder was fearful and intimidated by the plaintiff but the department explicitly rejected that finding. (ROR, Vol. 1, p. 1a.) While the record contains evidence that supports the hearing officer's rejected finding, the court is not allowed to substitute its judgment for that of the department on findings of fact. The remaining pertinent findings included in the final decision are as follows:
 Thus, the evidence shows that Sandra Salmon did repeatedly use the term "pussy" while wiping Mrs. Tschauder's perineal area. I have no problem categorizing this as vulgar and inappropriate language.
(ROR, Vol. I, p. 5a.)
Under Connecticut Light Power Co. v. Texas-Ohio Power,Inc., 243 Conn. 635, supra, this court need not afford the department deference in its interpretation of "resident abuse." The department found that vulgar and inappropriate language constitutes resident abuse without any explicit finding as to how or if such language affected the patient. The court reads General Statutes § 20-102cc to require such a finding to conclude that vulgar and inappropriate language constitutes resident abuse.
"Vulgar and inappropriate" does not necessarily imply harm or assault. Under the commonly recognized definition of "abuse," it occurs when one attacks or injuries with words, reproaches coarsely, disparages; to injure, hurt or damage. Webster's Third New International Dictionary. The court's interpretation of resident abuse under the statute includes some form of adverse impact, whether physical, mental or emotional, upon the resident. CT Page 3016 This accords with the policy behind the statute: to protect the frail and elderly that reside in long term facilities from mental and physical mistreatment by the staff. See 42 U.S.C. § 1395i-3
(c); General Statutes § 20-102aa et seq., 36 H.R. Proc. Pt. 9, 1993 Sess., pp. 3038-3039, remarks of Representative Joseph Courtney. Without a finding that supports a conclusion that the vulgar and inappropriate language had an adverse impact on the resident, the court cannot affirm the ultimate conclusion of resident abuse. The court finds that the plaintiff's substantial rights have been prejudiced by the department's determination of resident abuse without the requisite finding. The appeal is sustained. "When agency action is overturned . . . because of invalid or insufficient finding . . . [the] court must ordinarily remand the matter under consideration for further consideration." Williams v. Best Cleaners, 235 Conn. 778, 787
(1996), quoting Dept. of Health Services v. Commission on HumanRights Opportunities, 198 Conn. 479, 488 (1986); see General Statutes § 4-183 (j). Pursuant to § 4-183 (j) this case is remanded to the department for further proceedings on the existing record to state its finding as to whether the language used by the plaintiff adversely impacted the resident Tschauder.
DiPENTIMA, J.